**ATLANTIC RICHFIELD COMPANY, a corporation, Appellant (Petitioner below),**

**v.**

**BOARD OF the COUNTY COMMISSION-ERS of the COUNTY OF SWEETWA-TER, Appellee (Respondent below).**

**In the Matter of the Appeal of Atlantic Richfield from the Decision of the Board of Commissioners of Sweetwater County, Wyoming.**

**ATLANTIC RICHFIELD COMPANY, a corporation, Appellant (Petitioner below),**

**v.**

**BOARD OF COUNTY COMMISSIONERS OF SWEETWATER COUNTY, Wyoming, Appellee (Respondent below).**

**Nos. 4504 and 4505.**

Supreme Court of Wyoming.

Oct. 7, 1977.

Walter C. Urbigkit, Jr., of Urbigkit, Moriarity, Halle & Mackey, P.C., Cheyenne, for appellant.

Robert L. Bath, Sweetwater County and Pros. Atty., and Jack A. Smith, Deputy County and Pros. Atty., Sweetwater County, Rock Springs, for appellee.

Before GUTHRIE, C. J., RAPER, THOMAS and ROSE, JJ., and ALAN B. JOHNSON, District Judge.

ROSE, Justice.

The primary question presented in this appeal concerns the propriety of refunding state ad valorem taxes collected on oil production subsequently determined to be the property of the United States. Appellant, Atlantic Richfield Company (hereinafter usually referred to as ARCO), raises this question in the context of an appeal from a judgment of the Second Judicial District Court of Wyoming, which affirmed the decision of the Board of County Commissioners of Sweetwater County (hereafter the Board) refusing to refund such taxes.

ARCO, as the successor by merger of the Sinclair Oil Corporation, is the lessee under oil and gas leases issued by the United States of America in the Lost Soldier Field, Sweetwater County, Wyoming. Prior to 1948, these leases produced from the Tensleep and shallower formations and were subject to the payment of royalty to the United States Government on a step-scale basis whereby the royalty increased from 12½% to 32% as the rate of production increased. In 1948, the leases were successfully deepened to the Madison and Cambrian formations, and appellant believed the production from these deeper sands was subject to a flat royalty rate of 12½% under an applicable Act of Congress. Therefore, during the years 1949 through 1971, appellant paid royalty to the United States Government at the 12½% rate, and paid taxes to Sweetwater County on the balance of said production, or 87.5% of the gross oil produced.

On November 22, 1961, the Federal Government demanded that appellant determine and pay the Government royalty from the deeper Madison and Cambrian formations on a step-scale basis, retroactive to the first production. The effect of this demand, if complied with, would have been to increase the Government's share of royalty oil, while commensurately decreasing the amount of production subject to State taxation. In protest, ARCO prosecuted an appeal from this demand through the Interior Department and the federal courts, the culmination of which was a decision by the United States Court of Appeals for the Tenth Circuit adverse to ARCO and upholding the Government's step-scale royalty demand. *Atlantic Richfield Company v. Hickel,* 10 Cir., 432 F.2d 587 (1970). In consequence, ARCO paid, in January, 1972, an additional federal royalty of $4,682,269.39, after a delay occasioned by computation of this amount.

In its letter to the appropriate county authorities, dated February 28, 1972, ARCO demanded a credit on its tax account to be offset against future State ad valorem taxes, which it urged was due by reason of the increased Federal royalty payment. Subsequently, ARCO filed a "Petition and Affidavit for Rebate of Taxes Levied Upon Erroneous Assessment" with the Board, requesting a refund of $140,712.86 for "taxes erroneously and illegally assessed against and collected from" the appellant. The Board, on January 3, 1973, denied the requested refund, stating that ARCO had failed to timely file an action and that, furthermore, the taxes collected were neither erroneous nor illegal since the improper deduction allowance was not caused by action of the Board. ARCO timely filed a Notice of Appeal, pursuant to § 18–157, W.S.1957, and a Petition for Review, pursuant to Rule 72.1, W.R.C.P., of the Board's decision.[1]

On appeal to this court, appellant raises the following issues: (1) Is it entitled to a tax refund, under § 39–113, W.S.1957,[2] of

---

1. Rule 87(b), W.R.C.P., provides:

 "All statutory provisions relating to procedure on appeal from or review of administrative action by district courts, including all time limitations, but not including provisions giving a right of appeal or review, are superseded, . . . ."

We find, therefore, that the provisions of Rule 72.1, W.R.C.P., are applicable, rather than those contained in § 18–157, W.S.1957.

2. Section 39–113, W.S.1957, provides:

 "In all cases where any person shall pay any tax, or any portion thereof, that shall thereafter be found to be erroneous or illegal, whether the same be owing to clerical or other errors, the board of county commis-

taxes paid to the county on oil production subsequently determined to be the property of the United States?; and (2) if the answer to Number (1) is in the affirmative, is entitlement to a refund under § 39–113, supra, nonetheless, barred by the one-year statute of limitations contained in § 39–157, W.S.1957?[3]

While admitting that refund-statute § 39–113, supra, provides a distinctive source of tax-payment recovery, the Board contends that the procedure contained in § 39–157, supra, controls a determination of the legality of the tax in question in this litigation and it was necessary for ARCO to have first obtained a finding of illegality in the district court before utilizing § 39–113. It is further the Board's position that the appellant-taxpayer must prove, in the course of the initial district-court procedure, that the tax was illegal and not merely excessive; that the tax was paid under protest; and that the tax has not been paid over to other taxing authorities or government entities. Finally, the Board urges that, in any case, no recovery is available to ARCO since the action to recover the tax was not brought within one year after the taxes and assessments were collected—all as provided for in § 39–157.

On the other hand, it is the appellant's position that § 39–113, supra, provides a wholly unique and separate administrative remedy for the refunding of erroneous or illegal tax payments in those circumstances in which error or illegality is discovered

after payment and which remedy is, therefore, not subject to such limitations as are urged by the Board. The appellant contends specifically that in this class of circumstance, the taxpayer need only prove to the Board that the tax was in fact paid and was "thereafter" found, in some "authorized proceeding" (such as, in this instance, an opinion from the Tenth Circuit Court of Appeals) to have been "erroneous or illegal."

We will uphold the contention of the taxpayer, ARCO, thereby reversing the trial court's judgment.

### LEGISLATIVE HISTORY

Section 39–113, supra, was originally enacted in 1876, as part of the territorial laws concerning taxation and revenue [C.L.1876, ch. 109, § 43]. At that time there was no legislative equivalent to § 39–157, supra. Where a taxpayer filed an application for a tax refund, and his application was denied, his only remedy was by appeal. C.L.1876, ch. 28, art. I, § 17 (now found in § 18–157, W.S.1957).[4] See *Houtz v. Board of Com'rs of County of Uinta,* 11 Wyo. 152, 70 P. 840, 843 (1902), citing *Powder River Cattle Co. v. Custer County,* 9 Mont. 145, 22 P. 383, 386 (1889); and 84 C.J.S. Taxation § 633b. On the other hand, § 39–157, supra, was not enacted until 1886, when the Code of Civil Procedure was adopted. Laws 1886, ch. 60, § 705. Chapter 60, § 805, Laws 1886, provided that:

sioners shall direct the treasurer to refund the same to the taxpayer, or, in case any real property subject to taxation shall be sold for the payment of such erroneous tax, the error in tax may at any time be corrected as above provided, and shall not affect the validity of the sale, but such property shall be redeemed by the county as hereinafter set forth."

3. Section 39–157, W.S.1957, provides:
"District courts shall have jurisdiction to enjoin the illegal levy of taxes and assessments, or the collection of either, and of actions to recover back such taxes or assessments as have been collected, without regard to the amount thereof; but no recovery shall be had unless the action be brought within one year after the taxes or assessments are collected."

4. Section 18–157, W.S.1957, provides:
"Appeal on disallowance of claim.—When any claim of any person against a county shall be disallowed, in whole or in part, by the board of commissioners, such person may appeal from the decision of such board to the district court for the same county, by causing a written notice of such appeal to be served on the clerk and chairman of such board within ten days after making such decision, and by executing a bond to such county with sufficient security, to be approved by the clerk of said board, conditioned for the faithful prosecution of such appeal, and the payment of all costs that shall be adjudged against the appellant."

"Where, by general or special statute, a civil action is given, and the mode of proceeding therein is prescribed, this code shall not affect the proceedings under such statute, until the legislature shall otherwise provide; . . ."

Since the refund of taxes through administrative action was a matter of governmental or legislative grace, the right to such a refund was purely of statutory origin. 84 C.J.S. Taxation § 631. Wyoming granted that statutory right in 1876. When a new remedy, that of an action to recover taxes (originating in the district court) was enacted in 1886 as part of the civil code, there was no indication that the new remedy in any way did control or was intended to control the administrative procedure previously established for refunding taxes or to supplement or overrule the refund statute.

█ The Board urges that the legislature's intent is revealed by the fact that both sections of the statute are contained in the title concerning taxation and revenue and § 39–113, supra, is cross-referenced to § 39–157, supra. It should be remembered that § 39–157 remained a part of the civil code until the 1957 compilation of the statutes. When the statutes were recompiled, the *compilers* transferred §§ 39–157 to 39–160, supra, from the civil code to their present location in the compiled statutes. See, Editors note § 1–1, W.S.1957. These editorial decisions of the compilers cannot have the force of effectuating a combination of remedies when theretofore, and according to the progression of legislative enactment, the remedies remained separate and distinct. A more authoritative indication of legislative intent is required before such statutory construction is justified, and

a review of the applicable case law leads unerringly to the conclusion that such a construction as is urged by the Board is inappropriate here.

## THE CASE LAW

In *Kelley v. Rhoads,* 7 Wyo. 237, 51 P. 593, 39 L.R.A. 594, 75 Am.St.Rep. 904, the taxpayer had demanded the return of taxes asserted to have been illegally collected. The county assessor refused to refund and the plaintiff filed an action to recover the taxes. We held that § 3055, R.S.1887 [§ 39–159, W.S.1957] contained the proper method of legal procedure.[5] We did not, however, hold that *all* refund actions must initially follow the provisions now found in §§ 39–157 to 39–160, supra. Rather, we found that there were various ways by which the illegality of a tax could be initially determined. See also, *Board of Com'rs of Johnson County v. Searight Cattle Co.,* 3 Wyo. 777, 31 P. 268, 276 (1892); *Carton v. Board of Com'rs of Uinta County,* 10 Wyo. 416, 69 P. 1013, 1017 (1912); *Rowley v. Chicago & N. W. Ry. Co.,* 10 Cir., 68 F.2d 527, 528 (1934); *Hudson Oil Co. v. Board of County Com'rs of Fremont County,* 49 Wyo. 1, 52 P.2d 683, 689 (1934); *Board of County Com'rs of Morgan County v. Doherty,* 114 Colo. 594, 168 P.2d 556, 558 (1946); *Casey v. Butte County,* 52 S.D. 334, 217 N.W. 508, 510 (1927); 72 Am.Jur.2d, State and Local Taxation, § 1065; and 84 C.J.S. Taxation § 734.

*Casey v. Butte County,* supra, is peculiarly in point. This case is concerned with federal exemption from state taxation and concludes that the alternative administra-

---

5. Section 39–159, W.S.1957, provides:

 "Parties to actions to enjoin collection or to recover back taxes.—Actions to enjoin the collection of taxes and assessments must be brought against the officer whose duty it is to collect the same; actions to recover back taxes and assessments must be brought against the officer who made the collection, or, if he is dead, against his personal representative; and when they were not collected on the tax list, the corporation which made the levy must be joined in the action; provided, that when the money derived from said

taxes or assessments has been actually paid over to any county or municipal corporation for whose use and benefit it was levied or collected, then an action shall be brought against said county or municipal corporation to recover said taxes or assessments."

*Kelley v. Rhoads,* 7 Wyo. 237, 51 P. 593, overruled *Board of Com'rs of Johnson County v. Searight Cattle Co.,* 3 Wyo. 777, 31 P. 268 (1892), which held that the suit under this statute must be brought against the officer making the assessment and held that the proper party-defendant is the county in its corporate name.

tive remedy for tax refunding where the tax had been illegally paid is available under a statute similar to our § 39–113, supra.

In *Kelley,* supra, where it was argued that § 39–159 (§ 3055) and § 39–113 (§ 3821) were in conflict, we observed that the two sections were actually in harmony, and we said:

". . . We are not of that opinion, but believe that it harmonizes with it, and tends to explain it. The two sections should be so construed that both shall stand, if possible. . . ." Ibid., 51 P. at p. 603.

Since it was the board of county commissioners which directed the county treasurer to make refunds under the predecessor to § 39–113, supra, we found it advisable to say that an action to recover taxes under § 39–157, supra, when such taxes have been paid into the county treasury, should be brought against a county in its corporate name. In certain respects, then, the provisions of §§ 39–113 and 39–157 to 39–160, supra, are in harmony. Their purpose is the same, namely to insure the return of tax monies rightfully belonging to the taxpayer, and in some instances they allow for actions against the same corporate body.

 In *Kelley* we also said of § 39–113, supra, that this section

"impresses upon the county board the absolute duty to direct the treasurer to refund any tax found to be *erroneous,* . . ." [Emphasis supplied] Ibid., p. 604.

We then observed, in contemplating the "erroneous character of the tax":

"The *erroneous character of the tax may be adjudged* by the courts in a suit for a recovery of the amount paid, or *by some other authorized proceeding,* or the board itself may discover that it is invalid. In either event it is to be refunded to the person entitled thereto. . . ." [Emphasis supplied] Ibid., p. 604.

The import of this language is that the "erroneous character of the tax" need not necessarily be determined by a district court suit or by the commissioners before § 39–113 becomes available to the taxpayer.

*Kelley* holds § 39–113 to be available where the "erroneous character of the tax" is established after payment either (a) in a suit for the recovery of the tax; (b) where the Board discovers the error or illegality; or (c) *where the "erroneous character of the tax . . .* [is established] *by some other authorized proceeding."* [Emphasis and bracketed matter supplied] It follows that a Tenth Circuit Court of Appeals' decision holding, in effect, that the State of Wyoming had been collecting taxes upon federally-owned royalty interests was such an "authorized proceeding" as would satisfy the requirement of *Kelley* and, therefore, make § 39–113 available to the taxpayer. To hold otherwise would be to say that taxpayers, even though they have paid an illegal or erroneous tax, are without remedy in those circumstances where, at the time of assessment and payment, the tax appeared to be proper but was later determined illegal or erroneous. The legislature did not intend this.

We again addressed our attention to the import of § 39–113, supra, in *Carton v. Board of County Com'rs of Uinta County,* 10 Wyo. 416, 69 P. 1013, 1018, when we said:

"We do not overlook the fact that we have a statute requiring the board of county commissioners to direct the treasurer to refund any erroneous or illegal tax, and *that such statutes are usually held to be mandatory although the payment was voluntary.* Rev.St.1899, § 1863; Rev.St.1887, § 3821. The Plaintiff in error does not claim any right of recovery by virtue of that section, and, moreover, he has not brought himself within its terms. The provision is that the board shall direct the treasurer to refund, and this language implies the necessity of an application to the board, for the purpose, before it can be deemed to be in default. *Bibbins v. Clark,* 90 Iowa 239, 57 N.W. 884, 59 N.W. 290, 29 L.R.A. 278. And, further, it is not sufficient, under the statute, that some irregular or unauthorized method was resorted to in the assessment, but *it must appear that the tax itself was erroneous or illegal;*

*that is, that it was not justly or equitably due from him. Board of Com'rs of Johnson Co. v. Searight Cattle Co.,* 3 Wyo. 777, 31 P. 268; *Board v. Armstrong,* 91 Ind. [528] 536." [Emphasis supplied]

Certainly, ARCO's payment of the tax to the county fits the injunction of *Carton.* A tax paid by a taxpayer to the county on property later determined to have been owned by the Federal Government surely must be thought about as not having been justly or equitably due.

■ In reliance upon the foregoing authorities, we conclude that while the provisions of § 39–113, supra, and §§ 39–157 to 160, supra, are harmonious in certain respects, they remain separate and distinct in others. Section 39–157, supra, contemplates the court having original jurisdiction over tax levies and assessments which, *at the time of payment,* are believed by the taxpayer to be either illegally assessed or levied. In other words—when the taxpayer is taxed or assessed in a way which *he* believes is illegal, he can look to the court for relief within one year from the time he pays his taxes.

Section 39–113, supra, is intended to remedy a different malady. The word "thereafter" is significant. The statute provides in part that the refund will be made when a tax has been paid which *"thereafter"* is found to be illegal or erroneous. This connotes timely payment and a *later* discovery of an illegal or erroneous tax. The further meaning of this language is that the legislature has determined it would be unreasonable to expect a taxpayer to protest a tax at a time when he is without knowledge, and is not chargeable with knowledge, of the illegal or erroneous nature thereof. Therefore, the taxpayer is entitled, under § 39–113, supra, to pursue a refund of a tax which is later determined by the commissioners, a district court, or "by some other authorized proceeding" (*Kelley,* supra), to be illegal or erroneous. Under both statutes, the legislature has determined that the taxpayer is entitled to a remedy—a remedy which will recover for the taxpayer those taxes which were not justly or equitably due from him and—at the same time—will avoid an unjust enrichment of the particular taxing entity.

Section 39–113, supra, as opposed to § 39–157, supra, clearly contemplates the situation presented in the instant case. When the taxes were paid by ARCO to Sweetwater County, it was not the position of either the taxpayer or the county that the tax was illegal or erroneous or that it was illegally or erroneously assessed and paid. Nor was it then known that such was the case. Both the taxpayer and the county believed the tax was due and payable. ARCO fervently urged the legality of the tax through the Department of the Interior and the federal courts. More than four million dollars were riding upon ARCO's theory that the production in question was its property and not the property of the Federal Government, with the residual belief that the State tax was, therefore, proper. It was only after the federal appellate court rendered its decision to the effect that the royalties were due on a step-scale basis that anyone could say that the tax was illegal—that it was erroneous—that it was illegally or erroneously assessed and collected. Thereafter, the taxpayer appropriately pursued its § 39–113 refund remedy. ARCO could not have pursued a remedy under § 39–157, supra, because the facts out of which its complaint arose were not contemplated by that statute. Having determined that ARCO pursued the correct course of action, we must still ask whether it was entitled to a refund. This, in turn, depends on the answer to the following question:

*What is such an "erroneous or illegal" tax as will comport with § 39–113?*

It was said in *Ritchie Grocer Co. v. City of Texarkana,* 182 Ark. 137, 30 S.W.2d 213, 214–215:

". . . In the case of *Clay County v. Brown Lumber Co.,* 90 Ark. 413, 119 S.W. 251, 253, it was said that 'the term "erroneous assessment," as there used, refers to an assessment that deviates from the law and is therefore invalid, and is a defect that is jurisdictional in its

nature, and does not refer to the judgment of the assessing officers in fixing the amount of the valuation of the property. If the property paid on was exempt from taxation . . . so as to make the assessment beyond the jurisdiction of the assessing officer or board, then the provisions of Kirby's Dig. § 7180 [Crawford & Moses' Digest, section 10180] give the owner a remedy for a refunding of such taxes thus erroneously paid; . . .'"

In *Parr-Richmond Industrial Corp. v. Boyd,* 43 Cal.2d 157, 272 P.2d 16, 21–22, the court said:

". . . Where the owner of property rights claims that the tax assessment overvalued what he owned, he may not attack the determination of a board of equalization in court unless he has fully and fairly presented the question of the value of his property to the board . . . *But where the taxpayer attacks the assessment as void because he does not own the property on which the tax demand was made, there is no question of valuation which must be presented first to the board of equalization for correction as a condition for judicial relief; . . .*" [Emphasis supplied]

In *Board of County Com'rs v. Doherty,* 114 Colo. 594, 168 P.2d 556, 558, 165 A.L.R. 868, the Supreme Court of Colorado found ". . . '[t]hat the plaintiff and the county, by mutual mistake during all the years in question, assessed said lands and paid taxes without any negligence on the part of either the county or the taxpayer.'"

The court further said:

". . . We are dealing with a situation which presents no complications. The property here was not taxable. . . .

". . . 'The statute of Colorado here under consideration changes that law. It provides that, in all cases in which a person shall pay a tax which is for any reason erroneous or illegal, the board of county commissioners shall refund the same without abatement or dis-

count. This is substantive law. It gives a new right. The statute has nothing to do directly with the law of procedure. The remedy for the enforcement of the right which it gives is not prescribed by statute. That remedy is a suit at law. . . .'

\*　\*　\*　\*　\*　\*

". . . 'Recovery is sought in this case under a specific and unqualified statute commanding a refund by the county of every erroneous or illegal tax paid, and does not involve the general law upon that subject. \* \* \* The statute provides that, when "any person shall pay" an illegal or erroneous tax, the board shall refund.' . . ." Ibid., pp. 558–559.

The court goes on to say with some finality:

". . . '. . . [T]here are but two prerequisites to a suit under the latter section . . ., that the tax be paid and that it be erroneous or illegal. . . . It was levied against nontaxable property, hence was both erroneous and illegal.' . . ." Ibid., p. 559.

▌ In the instant case, the Board contends that we are confronted merely with excessive taxation and not an illegal-taxation problem, citing *Bunten v. Rock Springs Grazing Ass'n,* 29 Wyo. 461, 215 P. 244 (1923). Clearly, however, this is an illegal-tax situation. The tax here was levied against nontaxable property belonging to the Federal Government. See *Hudson Oil Co. v. Board of County Com'rs,* supra, 52 at p. 688; 84 C.J.S. Taxation § 632b(2); and § 39–7(A)(3), W.S.1957, 1975 Cum.Supp.

It is said in the C.J.S. text last cited:

"Since an assessment of taxes on property which is exempt by law is illegal and not merely erroneous, as discussed supra § 402, if the taxes have been paid, a refund may properly be claimed under statutes in substance authorizing a refund of taxes illegally paid, and the fact that such payment was voluntary does not preclude relief. So, a refund of taxes paid on exempt property may be had under a statute authorizing refund of

taxes paid on property 'erroneously assessed,' or 'erroneously or illegally collected,' . . .." [Footnote citations omitted]

Section 39–7(A)(3), W.S.1957, 1975 Cum. Supp., provides:

"*Generally.*—The following described property is hereby exempted from ad valorem taxation:

"*First. Public property, etc.* (A) United States Property. The property of the United States, when used primarily for a governmental purpose, including:

\* \* \* \* \* \*

"(3) Such other properties of the federal government which the state board of equalization shall, by appropriate regulation, exempt from ad valorem taxation. The state board of equalization shall exempt additional property from taxation only after a determination, upon competent evidence, that such property is owned and used by the federal government for a governmental purpose; that a tax cannot be levied and collected without the prior consent of the federal government or that the federal government has not given or will not give its consent to such levy and collection."

In *Hudson Oil Co. v. Board of County Com'rs,* supra, where the state sought to tax oil from federal leases, this court found the tax to be illegal. We said, at 52 P.2d p. 688:

"Guided by the foregoing authorities, we are obliged to conclude that the taxes collected by the county treasurer of Fremont county from the plaintiff, and here involved, were *illegal* in character." [Emphasis supplied]

We hold, therefore, that § 39–113 represents a completely separate remedy from that contained in § 39–157. Appellant could and did properly seek relief by applying to the commissioners for a refund of this tax, later found to be illegal, and then appealing the refusal. Under the facts presented here, the taxpayer was not required to first file an action in district court under § 39–157. Having followed the prop-

er procedure, and in reliance upon a federal court decision which disclosed the illegal or erroneous nature of the State ad valorem tax, ARCO was, unless otherwise by law denied, entitled to a refund.

## THE STATUTE OF LIMITATIONS ISSUE

■ The rights and remedies given by § 39–113, W.S.1957, are not burdened by any statute of limitations presently contained in the laws of Wyoming. In addition to those provisions specifically noted, the statute says:

" . . . [I]n case any real property subject to taxation shall be sold for the payment of such erroneous tax, the error in tax may *at any time* be corrected as above provided, . . ." [Emphasis supplied]

If an error can be corrected *at any time* where property is sold for the payment of an erroneous tax, then it would seem that where, as here, the statute is applicable to transactions *not* relating to property, the same time requirement for making the claim for refund would be applicable unless there is statutory injunction to the contrary. This assumption is consistent with our holding herein which sanctions relief where the error or illegality of the tax is discovered *after* the payment thereof. It is to be remembered that the statute provides for refund relief where there is no property sale involved but where the tax has been paid and the tax is *"thereafter"* found to be erroneous or illegal. The word, "thereafter," connotes some undetermined future date within the same context as is conceived by the provision contemplating the correction "at any time" of an error arising out of a sale of property based upon an erroneous tax collection.

This is not to say that the legislature could not set a time limitation, commencing with the accrual of the cause of action, after which a claim could not be filed under § 39–113, W.S.1957. Furthermore, it might be that the doctrine of laches may, indeed, have some applicability in circumstances where the refund-seeker is found to have

failed to timely pursue his rights after payment and discovery of the erroneous or illegal tax. That issue is not, however, before us and we do not decide it.

The judgment of the district court is reversed, and the cause remanded for entry of a judgment consistent with this opinion.

Reversed.