**ENRON OIL & GAS COMPANY,**
Appellant (Plaintiff/Petitioner),

v.

Nancy **FREUDENTHAL**, Marvin Apple-
quist, and Terry E. Rubald, sitting as
the Board of Equalization of the State
of Wyoming, Appellees (Defen-
dants/Respondents).

No. 93–60.

Supreme Court of Wyoming.

Oct. 21, 1993.

Dante L. Zarlengo, Denver, CO and Jo-
seph P. Fonfara of Fonfara Law Offices,
Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., Michael L. Hubbard, and Vicci M. Colgan, Sr. Asst. Attys. Gen., for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

CARDINE, Justice.

Appellant, Enron Oil and Gas Company (Enron), applied for a severance tax refund with the Wyoming Department of Revenue and Taxation (Department) for the years 1987 through 1990. The Department granted the refunds for the years 1989 and 1990 but rejected Enron's claims for refunds for the years 1987 and 1988. Enron appealed the denial of its refund claims to the Board of Equalization of the State of Wyoming (Board) which concluded that the refund claims for 1987 and 1988 were barred by the two-year filing limit of W.S. 39-6-304(g) (1985) (Repealed by 1988 Wyo. Sess.Laws, ch. 90, § 2). The District Court affirmed the Board's decision, and Enron appealed to this court.

We affirm.

Enron raises the following issues:

A. Whether the time period for filing a request for a refund of severance taxes that is provided in W.S. 39-6-304(g) (1977) commences to run while the amount of refund is subject to an administrative appeal to the Wyoming Board of Equalization?

B. Whether the time period for filing a request for a refund of severance taxes that is provided in W.S. 39-6-304(g) (1977) is tolled while the amount of refund is subject to an administrative appeal to the Wyoming Board of Equalization?

C. Whether the trial court erred in finding that the decision of the Wyoming Board of Equalization denying a refund for severance taxes overpaid for the years 1987 and 1988 was not arbitrary and capricious?

**1.** Our authority to review decisions of the Board of Equalization is contained in W.S. 39-1-306 (1990) and 16-3-115 (1990). Section 39-1-306 provides:

### FACTS

The facts in this case are undisputed. Enron is the operator of several oil and gas properties that it owns with Chevron U.S.A., Inc. (Chevron). Enron produced oil and gas from these properties, and Chevron took its share of the production in kind. During the years in question, 1987 to 1990, Enron paid severance taxes on the total production, including the portion delivered to Chevron. Unbeknownst to Enron, Chevron was also paying severance taxes on its share which resulted in the State collecting double taxes.

The Department noticed that there were discrepancies in the production figures reported to it by Enron and Chevron. Based on the highest production figures, the Department issued severance tax assessments against Chevron. Chevron appealed these assessments to the Board. Enron was joined as a necessary party but did not participate in the Chevron appeals. The discrepancies in the production figures were reconciled by agreements between Enron and Chevron; and, on September 24 and 27, 1990, the Board entered orders resolving Chevron's appeals.

Subsequently, Enron filed requests for refunds for the overpaid severance taxes with the Department for the years 1987 through 1990. The Department granted the refunds for 1989 and 1990. The refund requests for 1987 and 1988 were denied. Enron appealed the denial of the refunds to the Board. The Board affirmed the Department's decision, concluding that the refunds for 1987 and 1988 were barred by the two-year filing requirement of W.S. 39-6-304(g). The district court affirmed the Board's decision for the same reason, and Enron now appeals to this court.

### STANDARD OF REVIEW

█ The standard of review for administrative decisions is well established.[1] The

Any person including the state of Wyoming aggrieved by any order issued by the board, or any county board of equalization whose decision has been reversed or modified by the

scope of our review is controlled by W.S. 16–3–114(c) (1990), which provides:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

See *Barcon, Inc. v. State Bd. of Equalization*, 845 P.2d 373, 376 (Wyo.1992). We do not give the district court's decision any special deference. *Id.*

The issues in this case concern the proper interpretation and application of a rule of law by a state agency. The standard of review for agency conclusions of law is:

If the conclusion of law is in accordance with law, it is affirmed, [*Department of Revenue and Taxation v.] Casper Le-*

*gion Baseball Club, Inc.*, 766 [767] P.2d 608 [Wyo.1989]; if it is not, it is to be corrected, *Rocky Mountain Oil & Gas Ass'n [v. State Board of Equalization]*, 749 P.2d 221 [Wyo.1987].

*Employment Sec. Comm'n v. Western Gas Processors, Ltd.*, 786 P.2d 866, 871, 86 A.L.R.4th 295 (Wyo.1990). *See also Aanenson v. State ex rel. Worker's Compensation Div.*, 842 P.2d 1077, 1079 (Wyo.1992).

### W.S. 39–6–304(g)

Wyoming Statute 39–6–304(g) stated:

Any excess tax found to have been paid, whether as the result of overpayment, an appeal or an erroneous assessment shall be refunded to the person paying the tax. All applications for refunds shall be made within two (2) years from the payment of the erroneous tax.[2]

Enron contends that the Board misinterpreted the language of this statute and, as a result, Enron was denied refunds to which it was entitled. Enron contends that the statute's two-year limitation on filing for refunds does not begin to run until the refund accrues. According to Enron, this occurs when the actual amount of the refund becomes determined. Here, the amount of the refunds did not become known until the Board issued its orders in the Chevron appeals. Enron alleges that to apply for a refund before then is an exercise in futility because the Board would have to deny its claim since the amount is not known.

In support of its position, Enron refers to the language of the statute. Specifically, Enron asserts that the word "appeal" in the statute endorses the conclusion "that the two year limitation provision commences when the appeal creating the excess tax is concluded." Enron points out that the statute is silent as to whether the appeal has to be one filed by the taxpayer

---

state board of equalization, may appeal the decision of the board to the district court of the county in which the property or some part thereof is situated.

Section 16–3–115 provides for supreme court review of the district court:

An aggrieved party may obtain a review of any final judgment of the district court under this act by appeal to the supreme court. The appeal shall be taken as in other civil cases.

**2.** Section 39–6–304(g) (1985) has since been repealed. 1988 Wyo.Sess.Laws, ch. 90, § 2. The repealed statute controls in this case.

or a third party. Enron argues that the Chevron appeals, to which Enron was a non-participating party, delayed the start of the two-year limitation in W.S. 39–6–304(g) until 1990 when those appeals were concluded. If that position is correct, then Enron filed its application for refunds within the statutory time limit.

We have stated many times our approach to reading the language of a statute:

As we read the text of a statute keeping in mind the functional relation between the parts and the whole, we know that statutory language may be either unambiguous or ambiguous. A "statute is unambiguous if its wording is such that reasonable persons are able to agree as to its meaning with consistence and predictability." *Allied–Signal, [Inc. v. State Bd. of Equalization,]* 813 P.2d [214] at 220 [Wyo.1991]. "[A] statute is ambiguous only if it is found to be vague or uncertain and subject to varying interpretations." *Id.* at 219–20. "[W]hether an ambiguity exists in a statute is a matter of law to be determined by the court." *Id.*

On numerous occasions the court has, over its long history, consistently followed a general rule that if the statutory language is unambiguous, the court may not resort to application of rules of construction. *See, e.g., Rasmussen [v. Baker],* 7 Wyo. [117] at 128, 50 P. [819] at 821 [1897] ("If the language employed is plain and unambiguous, there is no room left for construction. * * * Courts are not at liberty to depart from that meaning which is plainly declared."); *Gale v. Sch. Dist. No. 4,* 49 Wyo. 384, 54 P.2d 811 (1936); *Druley v. Houdesheldt,* 75 Wyo. 155, 294 P.2d 351 (1956); and *Zmijewski v. Wright,* 809 P.2d 280, 282 (Wyo.1991) ("If the language of a statute communicates a plain meaning to this court, that meaning will be applied.")

*Parker Land & Cattle Co. v. Wyo. Game & Fish Comm'n,* 845 P.2d 1040, 1043 (Wyo. 1993) (footnote omitted).

We have had previous occasion to examine W.S. 39–6–304(g). In *Amoco Production Co. v. State Bd. of Equalization,* 797 P.2d 552 (Wyo.1990), Amoco revised its reporting and accounting procedures which resulted in lower severance taxes for previous years' production. The Board denied refunds to Amoco for the years prior to the two-year limitation contained in 39–6–304(g). We affirmed the Board's finding that the statute was "clear" and that it "provides no exception for adjustments outside the two-year statute of limitations." *Amoco,* at 555.

■ The second sentence of the statute is clear and unambiguous:

*All* applications for refunds *shall* be made within two (2) years from the *payment* of the erroneous tax. [emphasis added]

*See Amoco.* The statute clearly states that all applications for refunds must be made within two years of the payment of the tax. It does not say, as Enron suggests, that the taxpayer has two years from the date of determination of the amount of a claimed refund. Enron's reading of the statute in this way would mean that we would ignore the mandatory "shall" in this sentence and the word "payment." Whether an appeal is by the taxpayer or a third party, "the statute's use of the term 'payment' means when the severance tax was actually paid." *Amoco,* at 556.

■ "Paid" is the operative word in the statute. Thus the plain meaning of 39–6–304(g) is that a refund is available for any excess tax found to have been paid because of an overpayment, because of an appeal, or because of an erroneous assessment. The excess tax here was not paid because of an appeal. It was not paid because of an erroneous assessment. It was paid as an overpayment, and the statute runs from the date of payment.

Enron's assertion that it could not file for a refund until the Chevron appeals were concluded because it would not know the amount of the refund until then does not govern the beginning of the running of the statute of limitations. A similar argument was made in *Amoco:*

Amoco argues that it was not always able to foresee when later accounting

and reporting corrections might result in subsequent adjustments (e.g., when a take-in-kind interest owner would submit revised figures) and, therefore, it was difficult to meet the two-year period. We do not disagree with this claim. The legislature, however, drafted the statute to place the burden of compliance on Amoco. Absent legislative direction, this court will not shift that burden.

*Amoco*, at 555 n. 6. The burden was on Enron to file its claims before the two years from payment elapsed. Enron failed to do so.

■ In fact, Enron's assertion that it could not apply for its tax refund until the amount was determined by the Chevron appeals is contradicted by the record. Amended returns can and almost always are filed before the Board rules on take-in-kind appeals. Enron could have filed its refund claims but failed to do so. We cannot legislate an exception to an unambiguous statute because it would be fair or equitable to do so.

Enron argues that if the statute of limitation did commence when it paid the tax, it was nevertheless tolled by the Chevron appeals. In support of this contention, Enron urges this court to adopt the doctrine of equitable tolling. *See Dayhoff v. Temsco Helicopters, Inc.*, 772 P.2d 1085, 1087 (Alaska 1989); *Erickson v. Croft*, 233 Mont. 146, 760 P.2d 706, 708 (1988). This court has not previously considered whether the doctrine of equitable tolling is available to allow litigants the opportunity to escape the bar of a statute of limitations.

The issue of whether equitable tolling applied to toll W.S. 39–6–304(g) was not raised by Enron in its briefs at the administrative level nor at the district court. Enron, in its appeal to this court, raises the matter of equitable tolling for the first time. We have stated numerous times that this court will not consider matters that are raised for the first time on appeal. *Iberlin v. TCI Cablevision of Wyoming, Inc.*, 855 P.2d 716, 726 (Wyo.1993); *Sheridan Commercial Park, Inc. v. Briggs*, 848 P.2d 811, 817 (Wyo.1993); *Strom v. Felton*, 76 Wyo. 370, 302 P.2d 917, 924 (1956). We have

also stated that "[t]his court has taken a dim view of a litigant trying a case on one theory and appealing it on another." *Epple v. Clark*, 804 P.2d 678, 681 (Wyo.1991). "Parties are bound by the theories which they advanced below." *Id.*

■ Enron did not advance the theory of equitable tolling at the district court or at the agency level. Therefore, we would ordinarily decline to consider its argument. It is a simple matter for us in this case, however, to point out that if we were to consider the argument, Enron could not prevail on the merits. Equitable tolling applies only where a party has more than one legal remedy available to him. *Erickson*, at 708 (*quoting Addison v. State*, 21 Cal.3d 313, 146 Cal.Rptr. 224, 226–27, 578 P.2d 941, 943 (1978)). The doctrine acts to toll the statute of limitations for the one remedy while the party is pursuing the other. *Id.* Here, only one remedy was available to Enron. Enron could obtain a severance tax refund only by applying to the Department. The appeals by Chevron did not constitute an alternative legal remedy available to Enron. First, it was Chevron who instituted the action, not Enron. Second, although Enron was joined in the action, it did not participate in the proceedings. Third, Enron could recover nothing in the action being pursued by Chevron. Consequently, Enron's claim must fail on the merits.

## ARBITRARY AND CAPRICIOUS

■ Enron's final argument is that the Board's decision should be reversed because its denial of refunds was arbitrary and capricious. This argument must also fail for the obvious reason that since the Board correctly applied the appropriate rule of law to the facts, its action was not arbitrary or capricious.

## CONCLUSION

Wyoming Statute 39–6–304(g) is clear and unambiguous. All applications for refunds of severance taxes must be made within two years of the payment of the tax. Enron failed to make application within the

prescribed two-year period. Therefore, the Board was correct in denying the refund requests for 1987 and 1988.

Affirmed.