**AMOCO PRODUCTION COMPANY, Appellant (Petitioner),**

v.

**BOARD OF COMMISSIONERS OF CARBON COUNTY, Appellee (Respondent)**

and

**AMOCO PRODUCTION COMPANY, Appellant Petitioner,**

v.

**BOARD OF COMMISSIONERS OF SWEETWATER COUNTY, Appellee (Respondent).**

No. 93–63.

Supreme Court of Wyoming.

June 23, 1994.

Algirdas M. Liepas and Alvin Wieder-spahn, Wiederspahn, Lummis & Liepas, P.C., Cheyenne, for appellant.

Bruce A. Salzburg, Herschler, Freuden-thal, Salzburg, Bonds & Rideout, P.C., Cheyenne, for appellees.

Brent R. Kunz and Rebecca Hellbaum, Hathaway, Speight, Kunz & Trautwein, Cheyenne, for amici curiae, Rocky Mountain Oil and Gas Ass'n, acting through its Wyoming Division, Petroleum Ass'n of Wyoming, and Wyoming Taxpayers Ass'n.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

THOMAS, Justice.

The issue in this case is whether a company that produces oil and gas is entitled to a refund of taxes when the assessed valuation has been reduced by the Wyoming State Board of Equalization (Board). The Board of County Commissioners, in both Carbon and Sweetwater Counties, denied any refund for taxes that had been overpaid in light of the reduced assessment even though the counties accepted the benefit of additional taxes determined to be due because of the increase in assessed valuations arising out of the same audit process. Review was pursued in the District Court of the Second Judicial District where the taxes were determined not to be "erroneous or illegal" taxes within the meaning of WYO.STAT. § 39–4–101(b) (Supp.1992). The court then affirmed the denial of the refund by the respective counties. We hold the reach of this statute is not limited simply to illegal taxes, i.e., those which the taxing authorities had no justification for imposing, and when the assessing authority determines that the correct value of the taxable property was lower than the value on which the taxes were originally paid, the taxpayer is entitled to refund of the erroneous taxes. The decision of the district court is reversed, and the case is remanded for entry of an order requiring both Sweetwater and Carbon Counties to refund the taxes paid in error.

Amoco Production Company (Amoco) sets forth the issues in its Brief of Appellant as follows:

A. What is the effect, for *ad valorem* purposes, of Special Directives (and Notices of Changed Valuation) issued to the Appellees by the State which give Notice of a change in the valuation of State assessed property?

B. Are the Appellees obligated to follow Special Directives or Notices of Changed Valuation as they pertain to state assessed property?

C. Did the District Court commit reversible error by finding that Appellant's overpayments of *ad valorem* taxes were not "erroneous" taxes within the meaning of W.S. § 39–4–101(b)?

D. Did the District Court commit reversible error by finding that Appellant's overpayments of *ad valorem* taxes were not "illegal" taxes within the meaning of W.S. § 39–4–101(b)?

E. Did the District Court commit reversible error by finding that Appellant's overpayments of *ad valorem* taxes were not "excess taxes" within the meaning of W.S. § 39–4–101(b)?

F. Did the District Court commit reversible error by finding that *ad valorem* taxes retained by the Appellees in violation of Appellant's rights under the United States Constitution and the Constitution of the State of Wyoming were not "illegal" taxes within the meaning of W.S. § 39–4–101(b)? ·

In a Joint Brief of *Amici Curiae,* Rocky Mountain Oil and Gas Association, acting through its Wyoming Division, Petroleum Association of Wyoming, and Wyoming Taxpayers Association in Support of Appellant Amoco Production Company, the issue presented is stated to be:

Whether Special Directives issued by the State of Wyoming on state assessed property require Counties to increase or reduce valuation, and correspondingly collect underpayments and refund or credit overpayments of *ad valorem* taxes?

In the Brief of Appellees, the Board of Commissioners of Carbon County and the Board of Commissioners of Sweetwater County

(Counties), articulate the principal issue including three sub-issues in this way:

Whether a mineral taxpayer is entitled to a refund of ad valorem taxes paid in prior years merely because it has amended its reports to correct errors in its original reports, absent a showing that the taxes were "erroneous or illegal" or "excess tax" pursuant to Wyo.Stat. 39–4–101(b)?

(1) Whether a special directive (now called a notice of valuation change) issued by the State Department of Revenue constitutes an "order" to the counties to refund ad valorem taxes paid?

(2) Whether, when a taxpayer amends its originally reported production volume and value, decreasing the same, and the State issues a special directive reflecting the amended report, the tax paid on the difference is rendered "erroneous or illegal" or "excess tax" pursuant to the refund statute?

(3) Whether, in the circumstances of this case, the denials of the refund requests constitute an unconstitutional result?

The facts against which the statute is to be applied are clear. Amoco is the lessee of a number of oil and gas leases situated in Carbon and Sweetwater Counties. Gross production from these leases is subjected to *ad valorem* tax by Article 15, § 11 of the Constitution of the State of Wyoming.[1] Amoco, in accordance with the practice of similar producers of oil and gas, furnishes production reports to the Wyoming Department of Revenue (Department). The Department requires those reports be updated when additional information becomes available. The Board values oil and gas production, based upon information provided by producers, and the Counties then calculate

and collect the *ad valorem* taxes owed by producers. The essence of this statutory scheme is that the Board furnishes the assessing function for such taxes.

Following an internal audit, Amoco filed amended reports with the Board in 1985 relating to production from its leases during the years 1980 through 1984. Based upon information in the amended reports, the Board issued a special directive increasing the assessed valuation of Amoco's production, and Amoco then paid additional *ad valorem* taxes to both Carbon and Sweetwater Counties. Subsequently, Amoco filed another set of amended reports "to cure various inaccuracies contained in the 1985 amended returns." The processing of these reports by the Board was suspended temporarily during the continuation of an internal audit of production by Amoco.

By December of 1990, the Board had resumed processing this second set of reports, even though the internal audit still was incomplete. In 1991, the Board issued additional special directives that had the net effect of reducing the assessed valuation of Amoco's production for the relevant tax years. Amoco then requested a refund of $1,879,106.77 from Carbon County and $186,592 from Sweetwater County. Carbon County denied Amoco's request for a refund by a letter dated July 24, 1992, and on August 4, 1992, Sweetwater County sent a letter denying a similar request for refund. At this juncture, the stance of the Counties much resembled the old coin-flipping saw, "Heads I win—tails you lose!"

In their letters denying the refunds, both Counties relied upon Wyo.Stat. § 39–2–

---

1. Article 15, § 11 of the Constitution of the State of Wyoming provides, in pertinent part:

(a) All property, except as in this constitution otherwise provided, shall be uniformly valued at its full value as defined by the legislature in three (3) classes as follows:

(i) Gross production of minerals and mine products in lieu of taxes on the land where produced;

\* \* \* \* \* \*

(d) All taxation shall be equal and uniform within each class of property. The legislature

shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal.

201(d),[2] and pointed out that the time for protesting assessments on production of oil and gas had lapsed. The Counties also asserted Amoco had not paid an "illegal" tax under the provisions of Wyo.Stat. § 39–4–101(b).[3] In addition, the Counties contended neither the statutory law nor the special directives themselves created a right to refund whenever a producer files an amended return.[4]

Amoco filed petitions for review of the administrative actions of the Counties, which were consolidated for hearing in the district court of the Second Judicial District. In a decision letter written on January 8, 1993, the district court affirmed the refusal of the Counties to refund any tax payments to Amoco and stated:

> In addressing the bulk of Amoco's claims, the Court generally finds that Amoco failed to show that the alleged overpayments of *ad valorem* taxes were "erroneous or illegal" pursuant to W.S. § 39–4–101(b) and persuasive case law. In reaching its result, the Court agrees with the counties that the State's Special Directives do not have the effect of "ordering" the counties to refund *ad valorem* tax overpay-

ments. Thus, with the noted exceptions, the Court concludes that the counties applied relevant law correctly to the facts and circumstances of this case.

The determinations of the district court articulated in its decision letter were formalized by a judgment entered February 2, 1993, and Amoco appealed that judgment to this court.

While separately stated as issues, Amoco's primary contention is that the district court erred in refusing to order a refund of its net overpayment of *ad valorem* taxes because that overpayment was either "erroneous," "illegal," or "excess" within the meaning of Wyo.Stat. § 39–4–101(b). We focus upon the first sentence of that statutory section which reads:

> If any person pays any tax, or portion thereof, found to have been erroneous or illegal, the board of county commissioners shall direct the county treasurer to refund the **erroneous or illegal** payment to the taxpayer. (Emphasis added.)

The succeeding parts of this statutory provision pertain to those situations in which an increase in the value of a product is subject

---

2. Wyo.Stat. § 39–2–201(d) (Supp.1992) provides:

    (d) Following determination of the fair market value of property the department shall notify the taxpayer by mail of the assessed value. The person assessed may file written objections to the assessment with the board within thirty (30) days of the date of postmark and appear before the board at a time specified by the board. The person assessed shall also file a copy of the written objections with the county treasurer of the county in which the property is located, who shall notify the county assessor and the board of county commissioners, with an estimate of the tax amount under appeal based upon the previous year's tax levy.

3. Wyo.Stat § 39–4–101(b) (Supp.1992) provides as follows:

    (b) If any person pays any tax, or portion thereof, found to have been erroneous or illegal, the board of county commissioners shall direct the county treasurer to refund the erroneous or illegal payment to the taxpayer. When an increase in the value of any product is subject to the approval of any agency of the United States of America or the state of Wyoming, or of any court, the increased value shall be subject to property taxation. In the event the increase in value is disapproved, either in whole or in part, then the amount of tax which has been paid on the disapproved part of the

value shall be considered excess tax. Within one (1) year following the final determination of value, any person who has paid any such excess tax may apply for a refund, and the board of county commissioners shall refund the amount of excess tax paid. Any refund may, at the discretion of the board of county commissioners, be made in the form of credit against future tax payments for a period not to exceed five (5) years. Unless otherwise agreed to by the taxpayer, refunds in the form of credit against future tax payments shall be made in no less than equal annual amounts. The board of county commissioners shall not provide a credit for interest on the excess tax paid unless the taxes are paid under protest due to an appeal pending before the state board of equalization and the taxpayer prevails in the appeal.

4. Each of the special directives did contain these instructions addressed to the Counties:

    WHEREAS, in accord with the premises
    IT IS HEREBY ORDERED, the county assessor of each said county increase or reduce each year valuation by the amounts indicated in this directive, and so notify the county treasurer, county commissioners, and taxpayer of such action within thirty (30) days of the date of this directive.

to the approval of the federal or state government and address, in the alternative, the situation in which an increase is disapproved after the tax on the higher value has been paid. This situation results in an excess tax under the statute, but we are satisfied the circumstances disclosed by this record do not demonstrate an "excess tax" within the meaning of this statutory provision.

Over the years, this court has had occasion to define the term "illegal," as used in the statute. *See Atlantic Richfield Co. v. Bd. of Comm'rs of Sweetwater County,* 569 P.2d 1267 (Wyo.1977); *Bunten v. Rock Springs Grazing Ass'n,* 29 Wyo. 461, 215 P. 244 (1923); *Kelley v. Rhoads,* 7 Wyo. 237, 51 P. 593 (1898); and *Bd. of Comm'rs of Johnson County v. Searight Cattle Co.,* 3 Wyo. 777, 31 P. 268 (1892). We never have interpreted separately the meaning of the term "erroneous" in the statute. In *Atlantic Richfield Co.,* the phrase "erroneous or illegal" appears consistently throughout the opinion, but it is clear from the holding that the court considered the tax there to be an illegal tax. The Counties rely upon *Atlantic Richfield Co.* to support the conclusion that the phrase "erroneous or illegal" is a term of art and describes only those taxes that are illegal in the sense that there was no property for the taxing power to reach. That interpretation is not supported by any of the prior cases. *See also Hudson Oil Co. v. Bd. of Comm'rs of Fremont County,* 49 Wyo. 1, 52 P.2d 683, 689 (1935); *Carton v. Bd. of Comm'rs of Uinta County,* 10 Wyo. 416, 69 P. 1013 (1902); *Kelley.*

The contention that the word "or" should be read as conjunctive rather than alternative in the context of this statute is contrary to the rule of statutory construction generally espoused by this court. The word "or" usually is used in a disjunctive sense and can be interchanged with the word "and" only when necessary to harmonize the provisions of a statute. *Basin Elec. Power Co-op. v. State Bd. of Control,* 578 P.2d 557 (Wyo. 1978); *Matter of Voss' Adoption,* 550 P.2d 481 (Wyo.1976); *Smith v. City of Casper,* 419 P.2d 704 (Wyo.1966). We perceive a clear policy justification for the legislature wishing to provide for a refund of either an erroneous

or illegal payment by the taxpayer. The statutory scheme obviously relies upon reporting by the taxpayers. There must be some incentive for the taxpayer to correct reports discovered to be erroneous. No such incentive is present if the only effect of reporting errors in the original report would be to increase taxes without any opportunity for a refund. Consequently, we are satisfied the legislature intended the disjunctive in this statutory phrase.

In interpreting the word "illegal," we held a tax imposed on federal property was an illegal tax and not simply an overassessment. *Atlantic Richfield Co.* Similarly, when a county assessed and attempted to collect property tax on property later discovered subject to assessment only in another county, the tax was illegal because the county had no jurisdiction to impose it. *Searight Cattle Co.* A tax imposed by a county on property is not illegal merely because the property was overvalued or overassessed by the state. *Searight Cattle Co.*

The taxpayer's remedy for overvaluation or overassessment is to appeal the assessment pursuant to the procedure outlined in WYO.STAT. § 39–2–201(d):

(d) Following determination of the fair market value of property the department shall notify the taxpayer by mail of the assessed value. The person assessed may file written objections to the assessment with the board within thirty (30) days of the date of postmark and appear before the board at a time specified by the board. * * *

If the dispute is over the **amount** of the assessment, the taxpayer can object within thirty days and receive a hearing before the Board. The assessment stands until the taxpayer is successful in persuading the Board that the value is too high, and the value is then adjusted accordingly. Once that adjustment is made by the Board, following the hearing, or upon review of the Board's ruling, the correction reflects a new, accurate valuation. The tax is not illegal because there was no taxation of property over which the taxing authority had no jurisdiction.

In an instance such as this, however, without the necessity for an attack by the taxpayer, the Board acknowledges the error of a prior valuation when it revises that valuation in accordance with the amended reports by the taxpayer. · This concession of overvaluation serves to distinguish this situation from the persuasive authority cited by the Counties. *See Amoco Prod. Co. v. Bd. of Assessment Appeals of State of Colorado,* 770 P.2d 1207 (Colo.1989); *Coquina Oil Corp. v. Larimer County Bd. of Equalization,* 770 P.2d 1196 (Colo.1989). In addition, it appears there are significant differences in the statutory scheme in Colorado. Still, the district court that first reviewed the proceedings in Colorado may well have been correct in its perception, under their statute, that "it would be a denial of due process for the government to be able to recover an underpayment of property tax when the taxpayer erred in his favor without permitting the taxpayer to recover an overpayment when the taxpayer erred to its detriment." *Coquina Oil Corp.,* 770 P.2d at 1197.

As this case unfolded, Amoco could not avail itself of the remedy provided in WYO. STAT. § 39–2–201(d). The discrepancies in the valuations were not discovered until more than thirty days after Amoco received notice of the assessed value. Many valid reasons exist for a taxpayer to amend its report subsequent to the thirty day period. Examples of those grounds called to our attention included adjustment of interest owners' values and volumes; adjustment of gross sales volumes; and elimination of duplicate reporting.

■ It was to address exactly such a situation that we pointed out in *Atlantic Richfield Co.,* 569 P.2d at 1273, that the thirty-day proscription did not control, and we stated there:

Section 39–113 [WYO.STAT. § 39–4–101(b) ], *supra,* is intended to remedy a different malady. The word "thereafter" is significant. The statute provides in part that the refund will be made when a tax has been paid which *"thereafter"* is found to be illegal or erroneous. This connotes timely payment and a *later* discovery of an illegal or erroneous tax. The further

meaning of this language is that the legislature has determined it would be unreasonable to expect a taxpayer to protest a tax at a time when it is without knowledge, and is not chargeable with knowledge, of the illegal or erroneous nature thereof. Therefore, the taxpayer is entitled, under § 39–113, *supra,* to pursue a refund of tax which is later determined by the commissioners, a district court, or "by some other authorized proceeding" * * * to be illegal or erroneous. Under both statutes [WYO.STAT. §§ 39–4–101(b) and 39–3–203], the legislature has determined that the taxpayer is entitled to a remedy—a remedy which will recover for the taxpayer those taxes which were not justly or equitably due from him and—at the same time—will avoid an unjust enrichment of the particular taxing entity.

This language emphasizes the fact that it is impossible for a taxpayer to protest a tax at a time when it has no knowledge nor is it chargeable with knowledge that the amount of the tax is erroneous. It follows, when WYO.STAT. § 39–4–101(b) is applicable, there is no requirement for a protest to be presented within thirty days of the assessment. Such a requirement would demand every taxpayer protest every tax assessment even though there was no reason at the time of the assessment to assume the tax was either illegal or erroneous.

■ This case is similar to the *Atlantic Richfield Co.* case. Amoco filed amended reports based on information acquired subsequent to the thirty-day period for protesting the assessments. The Board did not reject the amended reports but, instead, adjusted the assessed valuation of Amoco's production based on those reports. Those adjustments were articulated in the form of special directives the Board issued. Those directives set the production valuation for the periods in question, and directives demonstrating an increase in valuation resulted in the assessment of additional tax, which Amoco paid. The Counties had full advantage of corrections of the reporting errors that led to an enhancement of the assessed value.

Justice demands taxpayers should have an equivalent advantage with respect to adjust-

ments which reduce the amount of taxes. In either instance, the original tax payment was "erroneous." The procedure articulated in WYO.STAT. § 39–2–201(d) is designed to permit the taxpayer to challenge an erroneous assessment prior to paying the tax and is useful only when the taxpayer has information at its disposal to demonstrate error. Conversely, WYO.STAT. § 39–4–101(b) is invoked, as *Atlantic Richfield Co.* demonstrates, when the tax has been paid and, subsequently, a determination is made that the tax paid was illegal or erroneous.

In this instance, the Board relied on the amounts set forth in Amoco's original reports, and it then relied on amended reports to adjust valuations of Amoco's production in the special directives. Essentially, the Board recognized the tax previously paid was erroneous, and we hold this process leads to appropriate adjustments both in favor, and to the disadvantage, of the taxpayer. To achieve that result, the tax paid does not have to be illegal. It is sufficient if it was erroneous as the Board had determined. In arriving at the meaning of the term "erroneous" in this case, it suffices to consult the plain and ordinary meaning articulated in WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 772 (1993) (emphasis added):

> 2 : deviating from what is true, correct, right, or wise: a : being or containing an error : **fallacious, mistaken, inaccurate** <an ˜doctrine> <received an ˜impression> <a stamp collection of ˜issues> b : characterized by error: **erring** <our own sad species ... lapsed and ˜humanity— L.P. Smith>.

We hold, when the Board adjusts the valuations for the purpose of mineral production taxes based upon a taxpayer's amended reports, the valuations upon which the tax was paid are demonstrably erroneous. The erroneous valuation is established by issuance of the special directive or notice of valuation change for purposes of the application of WYO.STAT. § 39–4–101(b). The fact the erroneous valuations were relied upon by the Counties to assess and collect taxes due does not demonstrate the taxes were "illegal." The Counties are invested with the authority to assess and collect such taxes. When adjusted valuations are adopted by the Board and special directives issued to the Counties, the fact that the calculations relied upon by the Counties were incorrect establishes, as a matter of law, that the taxes were "erroneous." Under the statute, the taxpayer then is entitled either to a refund or a credit against future taxes, at the discretion of the county commissioners.

We noted above these taxes were not "excess" taxes under this statute. We do not reach the constitutional issues in this instance because we hold the correct interpretation of WYO.STAT. § 39–4–101(b) is that it relates to "illegal" and also "erroneous" taxes.

The decision of the trial court is reversed, and the case is remanded for entry of an order requiring the Counties to either refund the amount of the erroneous taxes to Amoco or to afford it credit for those taxes against future assessments.

MACY, C.J., files an opinion concurring in part and dissenting in part.

MACY, Chief Justice, concurring in part and dissenting in part.

I concur in the portion of the majority opinion which concerns "excess" taxes. I disagree with, and dissent from, that portion of the majority opinion which holds that Amoco is entitled to receive a tax refund because the taxes it paid were "erroneous or illegal" taxes. I do not believe that Amoco's constitutional rights were violated. I would, therefore, affirm the district court's decision.

This Court has ruled: "[T]ax refunds are a matter of legislative grace, and the right to such a refund does not exist in the absence of statutory authorization." *Black v. Teton County Board of County Commissioners,* 775 P.2d 484, 487 (Wyo.1989). *See also Meridian Aggregates Company v. Wyoming State Board of Equalization,* 827 P.2d 375 (Wyo.1992). We must strictly construe statutes which provide for refunds of excess property taxes. *Black,* 775 P.2d at 487.

The majority holds that Amoco is entitled to receive a tax refund under the provisions

of WYO.STAT. § 39–4–101(b) (Supp.1993).[1] Specifically, the Court rules that the taxes were "erroneous" and that under the statute "erroneous" has a meaning separate and distinct from "illegal."

I believe that a careful reading of Wyoming case law interpreting the "erroneous or illegal" language reveals that the language has become a term of art which means illegal. In *Atlantic Richfield Company v. Board of County Commissioners of County of Sweetwater*, 569 P.2d 1267 (Wyo.1977), this Court interpreted the statutory language. 569 P.2d at 1273–75. The Court approvingly quoted an Arkansas case:

> "In the case of *Clay County v. Brown Lumber Co.*, 90 Ark. 413, 119 S.W. 251, 253 [ (1909) ], it was said that 'the term "erroneous assessment," as there used, refers to an assessment that deviates from the law and is therefore invalid, and is a defect that is jurisdictional in its nature, and does not refer to the judgment of the assessing officers in fixing the amount of the valuation of the property.' "

569 P.2d at 1273–74 (quoting *Ritchie Grocer Co. v. City of Texarkana*, 182 Ark. 137, 30 S.W.2d 213, 214–15 (1930)).

That statement was consistent with earlier Wyoming case law. In *Board of Com'rs of Johnson County v. Searight Cattle Co.*, 3 Wyo. 777, 783–87, 31 P. 268 (1892), *overruled on other grounds by Kelley v. Rhoads*, 7 Wyo. 237, 51 P. 593 (1898), this Court held that the "erroneous or illegal" language did not provide a vehicle for recovering excess taxes which were collected as a result of an overassessment. 3 Wyo. at 783–87, 31 P. 268. In holding that "erroneous" has a meaning separate from "illegal," the majority fails to distinguish these cases.

I would hold that, under the plain and unambiguous language of the statute, the taxes which were paid in this case were not erroneous or illegal. *Parker Land and Cattle Company v. Wyoming Game and Fish Commission*, 845 P.2d 1040, 1042–43 (Wyo. 1993). This case presents a classic incident of overassessment. The excess taxes were collected because the State Department of Revenue used incorrect information which was provided by Amoco to calculate the assessments. The taxes were not illegal, and the County Commissioners properly denied Amoco's requests for refunds.

Amoco had a remedy for the overassessments. WYO.STAT. § 39–2–201(b) (Supp.1993) requires persons with gross products from mines and mining claims to submit information to the State Department of Revenue about their production so that the department may assess the property. After the department determines the value of the product on the basis of the information submitted by the taxpayer, the department must give the taxpayer notice of the assessed valuation. The taxpayer has thirty days in which to protest the assessment. WYO.STAT. § 39–2–201(d) (Supp.1993). *See also AT & T Communications of the Mountain States, Inc. v. State Board of Equalization*, 768 P.2d 580 (Wyo.1989). Amoco did not protest most of the assessments in this case.[2]

---

1. Section 39–4–101(b) provides in relevant part:

     (b) If any person pays any tax, or portion thereof, found to have been erroneous or illegal, the board of county commissioners shall direct the county treasurer to refund the erroneous or illegal payment to the taxpayer.

2. Amoco asserts in its reply brief to this Court that it protested some of the assessments and that those protests resulted in special directives which were ignored by the County Commissioners. Amoco refers to a number of special directives which, although they are not completely clear in this regard, suggest that they resulted from Amoco's protests of the assessments. Most of these special directives resulted in increases in Amoco's taxable valuation and are of no consequence concerning Amoco's right to receive a refund. A few special directives, however, resulted in decreased taxable valuations.

     I note that using a reply brief to the Supreme Court is not the proper means for presenting an issue for disposition. *See* W.R.A.P. 7.01 and 7.03. Because the question of what effect a proper protest would have had on the outcome of this case was not specifically presented to the County Commissioners or to the district court, we should not consider it on appeal. *Oatts v. Jorgenson*, 821 P.2d 108, 111 (Wyo.1991); *Wyoming Bank & Trust Company of Buffalo v. Bonham (In re State Bank Charter Application of Security Bank, Buffalo)*, 606 P.2d 296, 300 (Wyo. 1980). The special directives contain the only evidence in the record concerning the protests. They are not clear as to the basis of the protests or the procedural history. This Court requires parties to present their specific arguments to the

A subsequent discovery of error by the taxpayer or the agency is irrelevant under the current statutory scheme because no authority exists for a refund of overassessed taxes to be made after the protest period has expired. Under the plain language of the statute, the tax itself must be erroneous or illegal in order to establish the basis for a refund. In this case, the tax was not illegal. Instead, it was the assessment or payment which was improper. *Searight Cattle Co.*, 3 Wyo. at 787, 31 P. 268.

Since the right to receive a refund of taxes is a matter of legislative grace and exists only by the virtue of a statute, neither the state nor the county authorities can be compelled to grant refunds which are not provided for by law. The special directives under the facts of this case did not, and indeed could not, serve as orders to the counties to refund the overpaid ad valorem taxes.

Amoco contends that it cannot always supply complete and accurate information for assessment purposes at the time that the initial reports must be filed with the state or within the thirty-day protest period. While I understand Amoco's plight and that of other similarly situated taxpayers, it is not this Court's duty to correct the problem. The Court's role is limited to interpreting the relevant statutes. If reporting within the time provided by the statutes is not possible, the Legislature is the proper forum in which taxpayers should air their grievances. *Enron Oil & Gas Company v. Freudenthal*, 861 P.2d 1090, 1094 (Wyo.1993); *Amoco Production Company v. Wyoming State Board of Equalization*, 797 P.2d 552, 555 n. 6 (Wyo. 1990).

---

agency, if appropriate, and then to the district court so that a clear and comprehensive record may be developed to support their respective positions. Without that record development, we are left to guess at the facts and proceedings below.