[Cited, *Crouch v. Wainscott,* 122 Ky. 107, 28 Ky L. 1030, 91 S. W. 289.]

---

J. D. BARBOUR, SHERIFF, *v.* J. K. GOODLOE.

[Abstract Kentucky Law Reporter, Vol. 6—601.]

**Powers of State Board of Equalization.**

The state board of equalization has power to equalize the value of property listed and valued by the assessor, but it has no power in equalizing the assessments of notes and money to raise the assess-

ment so as in effect to say that five thousand dollars in cash is worth six thousand dollars. If the board had power to do that it would also have power to require a land owner to pay tax on one hundred acres of land when in fact he owned only eighty acres.

APPEAL FROM LOUISVILLE CHANCERY COURT.

February 5, 1885.

OPINION BY JUDGE PRYOR:

The legislature at its last session passed an act entitled an act to equalize assessments for revenue purposes and to provide for a State Board of Equalization. The board having been appointed as provided by the act assembled at the capital of the state in June last and proceeded to equalize the assessments, and made their final report to the Auditor that the latter might report to the various tax collectors (the sheriffs) the result of the board's action. In equalizing the value of the personal property between the several counties the board added six per cent. to the aggregate value of the personal property in the County of Jefferson, thereby increasing the amount of the tax to be paid to that extent on the personal property in that county, which necessarily lessened it in other counties. In other words there was a deduction as to values in some counties and an increase in others. The appellee, Goodloe, in listing his property with the assessor gave in under the equalization law his cash, notes and the amount of his money deposited in bank. The notes were given in at what they called for, and the number of dollars deposited in bank correctly reported. This included all the money and notes he had or owned and amounted to $————. The Sheriff of Jefferson county having been notified by the Auditor of the increase made by the board proceeded to collect from the appellee the tax on the increased value of his personal estate, embracing his notes and money that had been included by the board in the class designated as personal property. The appellee resisted payment on this fund to the extent that his notes and money had been increased in value by the board, insisting that such was not the legislative intent, and if so that the act in this regard was unconstitutional.

The chancellor below restrained its collection and from that judgment the appeal is taken. The sole and only purpose of the act

in question was to secure a just equalization of assessments throughout the state by lessening the burden of those who had attempted to place a fair estimate upon their property and placing it upon those who were not contributing to discharge their just proportion of taxation. In so far as the state is concerned the aggregate amount of taxes paid into the treasury is neither increased nor diminished, and the only object in view by the enactment was to equalize the burden between the tax-payers. The board is required to equalize the value of property as listed and assessed in the different counties of the state, and by the sixth section "shall not reduce the aggregate assessed valuation in the state, neither shall it increase said aggregate valuation except in such an amount as may reasonably be necessary to a just equalization;" that it, the board, shall not increase the valuation in any one county to a greater extent than may be necessary to produce equality as between the tax-payers throughout the state. They can only equalize by increasing the value when too low and diminishing it when too high. It is the valuation of property the board is called on to equalize, and when this is done and reported to the Auditor their duties end.

The seventh section provides that "said board in equalizing the valuation of property as listed and assessed in different counties shall consider the following clauses of property separately, viz: personal property, lands, and town and city lots, and upon such consideration determine such rates of addition to or deduction from the listed or assessed value of each of said classes of property in such county, or to or from the aggregate assessed value of each of said classes in the state as may be deemed by the board to be equitable and just."

The eighth section provides that "In equalizing the value of personal property between the several counties said board shall obtain from the aggregate footings of the number and value of each, and the value of the several kinds of enumerated property in each county shall be obtained at those values, and the values of enumerated property thus obtained as compared with the assessed value of such property in each county, shall be taken by said board to obtain a rate per cent. to be added to or deducted from the total assessed value of personal property in each county, etc." The enumerated articles of personal property valued by the assessor consists of

horses, mules, cattle, stores, carriages and plate, etc., and all are plainly designated by the statute and the approximate value of each kind are presumed to be within the knowledge of the board, whose duty it is to make this equality in the burden. The aggregate footings of the number and value of each in a particular county will determine when compared with other counties whether the valuation is too high or low, and the aggregate value being increased or diminished as the case may be will determine the amounts to be paid by the tax-payer. In this estimate or aggregate amount is not to be included the estimate or value under the equalization law, as it was never contemplated by the provisions of this law that the board should undertake to value that of which they could have no knowledge or means of ascertaining except from the statement of the tax-payer and the list upon the assessor's book. They are not empowered by any provision of the act in question to investigate the extent of the estate, real or personal, of the tax-payer and to list for him property that he may have omitted to list, or erase from the assessor's book property that he may have improperly listed. They are required to deal with values only, and have no power to effect the assessment as made except as to value. In this case the appellee has listed his notes at the amounts appearing on their face; has reported every dollar that he owns or has on deposit, and yet if the residuum or the amount under the equalization law is included in the words "personal property" or by any provision of the enactment he is required to pay a tax upon an additional sum of money in excess of what he actually owns and has actually and in good faith listed for taxation. It has not been valued by the board and is not susceptible of any other valuation than is already fixed by the tax-payer. If he has five thousand dollars on deposit, the board has no power to say that he shall pay tax on six thousand dollars or that the five thousand dollars is worth six thousand dollars, or if he holds promissory notes amounting to five thousand dollars this board has no right to say that they are worth fifty-five hundred dollars. When the tax-payer who holds money or cash notes fails to list them the mode of correcting his list is with the county board, and the state board is confined to equalizing the value of property listed and valued by the assessor. If the board can compel the tax-payer to pay taxes on a larger sum than he reports under the Equalization Law, they can require

the same tax-payer to pay tax on a greater quantity of land than he reports or a greater number of horses than is listed, and in this manner increase or diminish his taxes regardless of value. Such a construction of the act must also necessarily produce inequality that is sought to be prevented by its adoption. "A," as guardian of infants living in the County of Boone, gives in their residuum at $10,000; "B," living in the County of Gallatin, guardian of infants, gives in their residuum at the same sum. The valuation of the $10,000 is increased in Boone, and "A" pays taxes on $11,000 when he has but $10,000 while the tax in Gallatin is diminished and "B" pays tax on $9,000. Such inequality must exist as between the tax-payers who list moneys, incomes, cash, notes, and under the equalization law where a change in the value of such property is made and the board attempts to make a dollar, whether called for in a note, bank bill or otherwise, worth more than its fixed value.

There are thirty-three counties in the state where the value of the personal property of the tax-payer, whether farmer, banker or mechanic, has been increased by the present board, and if required to pay, not only on the increased value of that kind of property which is the subject of valuation, but on that which is listed under the equalization law and which can not be valued by the board, it aggravates instead of lessening the evil complained of. The residuum is generally made up of income and cash or cash notes, and the value of the property under the equalization law is already equalized, and to tax it more in the one county than the other by increasing its value without any knowledge or means of ascertaining its value is purely arbitrary and not authorized by the act in question. There is no evidence authorizing the board to say that the tax-payers in one county have failed to list their property under the equalization law at its full value, and the tax-payers in an adjoining county have listed theirs for more than its value. Devlin on Taxation says: "The statute empowers Boards of Equalization to add to or deduct from the valuation of personal property, but this addition or deduction should be made upon satisfactory evidence or knowledge of the facts and not arbitrarily without any evidence or knowledge of the facts to support the same." The board is chosen to equalize the value of property, real and personal, and it was never intended that money, cash, notes or anything

else that makes up what is listed under the equalization law should be increased or diminished in value: first, because there is no mode of ascertaining its value, or, if there is, no such power is conferred upon the board, and second, as to cash notes and money when all the tax-payer has is included in the residuum, the value can not be increased by adding to it.

Exact equality in taxation can never be accomplished, but every citizen should be required to contribute as near as is practicable his share of the public burden, and the Board of Equalization, chosen from different parts of the state, when coming together, can form their own knowledge of the value of property required to be valued by the assessor, arrive at such conclusions as will approximate equality in values, and in that way make a just distribution of the burden. If the horses in one county are given in on an average value of $60, and in an adjoining county at an average of $30, the inquiry will suggest itself as to the cause of their difference, and so of mules and cattle, and the knowledge the members of the board may have of the value of such property in the particular counties or such as they may obtain from inquiry will enable them to correct this gross inequality, and so of lands and all property required to be valued by the assessor.

The board has no power to increase the tax imposed by law, nor has it the power to compel the citizen to pay tax on property he does not own or possess.

All statutes should be construed with a view of carrying into effect the legislative intent. The law-making power has already provided the means of equalizing the taxes to be paid on what is termed the surplus or value under the Equalization Law. The value of such property is estimated by the tax-payer and he is required to disclose on oath the value of his estate other than that listed and valued by the assessor, derived from all other sources, and while he might be examined by the assessor as to what constitutes the surplus, the aggregate value of this surplus throughout the state could never be revised by the board or changed in value without having each individual tax-payer before them, and this being entirely impracticable could not have been contemplated by the legislature. While the tax-payer in many instances may fail to place as high an estimate on his property as he should under this equalization law, it is manifest that in this particular the tax-

payer is as much in default in the one county as in the other, and the law now in force appealing to the conscience of each tax-payer comes nearer producing that equality under the statute of this character of estate than any speculative opinion on the part of the board based upon neither knowledge nor testimony in regard to the subject matter. When the board has no evidence the result of their own knowledge or information from others, as to the character and value of the surplus, it must be presumed that the tax-payer has complied with the law. We have been cited to one or two cases from the Supreme Court of Illinois conducing to sustain the views of counsel for appellant. The statutes of that state or the mode of assessments are not before us, and if similar to the statute of this state in determining the powers of this board we would be reluctant to adopt such a construction as must aggravate instead of remedy the evil. The result is therefore that the taxes on the value listed under the equalization law will be paid as if the board had never assembled, and the increase or decrease made only on the land and the classes of personal property valued by the assessor and enumerated in the statute. Nor will the increase of the tax on the residuum be added to the tax on the enumerated property or land, but only such increase on that property as is fixed by the board. The remedy by injunction was proper, particularly when the appellee has paid or offered to pay the tax legally imposed. *L. & N. R. R. Co. v. Warren County Court,* 5 Bush (Ky.) 243; *City of Covington v. Ludlow,* 1 Metc. (Ky.) 295.

The judgment is *affirmed.* The Chief Justice and Judge Lewis dissenting.

*Helm & Bruce, for appellant.*

*John Roberts, for appellee.*