2017 WY 117

The TOWN OF PINE BLUFFS,
Wyoming, Appellant
(Plaintiff),

v.

Trudy L. EISELE, Laramie County Treasurer; Kenneth Guille, Laramie County Assessor; and Laramie County, Wyoming Appellees (Defendants).

S-17-0027

Supreme Court of Wyoming.

October 3, 2017

Representing Appellant: Alexander K. Davison and Caleb C. Wilkins of Patton & Davison, Cheyenne, Wyoming. Argument by Mr. Wilkins.

Representing Appellee: J. Mark Stewart of Davis & Cannon, LLP, Cheyenne, Wyoming

Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.

DAVIS, Justice.

[¶1] The Town of Pine Bluffs owns and operates a day care facility. Laramie County taxed the facility based upon its conclusion that it was not used primarily for a governmental purpose. The Town sought an injunction in Laramie County District Court. That court dismissed the complaint, finding that the Town failed to exhaust administrative remedies available to it. Although we do so on a different basis than the district court, we affirm.

## ISSUES PRESENTED

[¶2] We have reorganized and restated the issues raised by the parties as follows:

1. Must a taxpayer exhaust administrative remedies before seeking an injunction or other relief from the district court under Wyo. Stat. Ann. § 39-13-109(c)(i) (LexisNexis 2017)?

2. Does the complaint, when allegations are regarded as true and viewed in the light most favorable to the Town, assert any claim that would entitle it to relief under Wyo. Stat. Ann. § 39-13-109(c)(i)?

## FACTS

[¶3] Because this case was decided on a Wyoming Rule of Civil Procedure 12(b)(6) motion to dismiss, the "facts" are to be determined from the amended complaint, as noted in the standard of review. The Town of Pine Bluffs owns and operates a day care center located in a building situated on lots it owns. The Town alleges that it created the day care to encourage economic development by allowing parents a safe place to leave their children while they are working. The facility was constructed with 1% specific purpose tax

funds authorized by the voters. All of the day care staff are Town employees. A fee is charged for day care, but all fees charged are used to offset the costs of operation, the day care has never operated at a profit, and it requires annual subsidies from the Town.

[¶4] In 2015, Laramie County Assessor Kenneth Guille assessed the day care as taxable property, evidently as a result of finding that it was not used "primarily for a governmental purpose" as it would have to have been to be exempt under Wyo. Stat. Ann. § 39-11-105(a)(v). Trudy Eisele, the Laramie County Treasurer, therefore added the day care property to the tax rolls for that year.[1] The Town contended that the property was in fact used for a governmental purpose and was therefore exempt, that taxing it was illegal, and that it had no adequate remedy at law, and was thus entitled to injunctive relief under Wyo. Stat. Ann. § 39-13-109(c), which will be discussed in detail below.[2]

### District Court

[¶5] The Wyoming statutes allow a taxpayer to appeal an assessment to the county board of equalization (CBOE) (the board of county commissioners), and to appeal from an unfavorable decision there to the state board of equalization (SBOE),[3] and from there to petition the district court for review, and ultimately to appeal to this Court. *See* Wyo. Stat. Ann. §§ 39-13-109(b), 16-3-114 (LexisNexis 2017), and W.R.A.P. 12.01 *et. seq.* The Town chose to proceed directly in district court with a claim for an injunction under § 39-13-109(c)(i) that the assessment was illegal.

[¶6] The County filed motions to dismiss the original and amended complaints. Those motions refer to a brief or briefs in support of them, but for some reason they are not included in the record on appeal. However, we glean from the order granting the motion that the County claimed that the Town had

not exhausted administrative remedies by pursuing an appeal to the CBOE as already generally described.

[¶7] The Town responded that § 39-13-109(c)(i) was a stand-alone remedy that allowed an injunction if the assessment was illegal. The district court agreed with the County, holding that the Town should have exhausted administrative remedies before resorting to an injunction. It noted that "[i]f Wyo. Stat. § 39-13-109(c)([i]) provides for an end-run around the administrative appeal process as the Town asserts, that is for the Wyoming Supreme Court to determine." The Town timely perfected this appeal from that decision.

### STANDARD OF REVIEW

[¶8] When reviewing motions to dismiss, we accept the facts stated in the complaint as true and view them in the light most favorable to the plaintiff. We will sustain a dismissal only when it is certain from the face of the complaint that the plaintiff cannot assert any fact which would entitle it to relief. *White v. Shane Edeburn Const., LLC*, 2012 WY 118, ¶ 10, 285 P.3d 949, 952 (Wyo. 2012) (citing *Sinclair v. City of Gillette*, 2012 WY 19, ¶ 8, 270 P.3d 644, 646 (Wyo. 2012)).

[¶9] This case involves construction of Wyo. Stat. Ann. § 39-13-109(c)(i). As we have observed:

In interpreting statutes, our primary consideration is to determine the legislature's intent. All statutes must be construed *in pari materia* and, in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony. Statutory construction is a question of law, so our standard of review is *de novo*. We endeavor to interpret statutes in accordance with the legislature's intent. We begin by making an

---

1. We will refer to the Appellees Eisele, Guille, and Laramie County collectively as the "the County."

2. The amended complaint also alleged that the assessor's interpretation of § 39-11-105(a)(v) was unconstitutional under the Wyoming Constitution. The district court dismissed that claim, but

its order on that point has not been challenged in this appeal.

3. The assessor may also appeal to the SBOE if dissatisfied with the county board's ruling. Wyo. Stat. Ann. § 39-13-109(b)(ii).

inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute *in pari materia*. When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction. Moreover, we must not give a statute a meaning that will nullify its operation if it is susceptible of another interpretation.

*Bates v. Chicago Lumber Co. of Omaha*, 2016 WY 58, ¶ 27, 375 P.3d 732, 739 (Wyo. 2016) (quoting *Powder River Basin Res. Council v. Wyo. Oil & Gas Conservation Comm'n*, 2014 WY 37, ¶ 19, 320 P.3d 222, 228 (Wyo. 2014)).

## DISCUSSION

### History of the Statutes

[¶10] We find it helpful to review the history of the statutes involved here. As early as 1876, the Wyoming Territory statutes provided that "[a]ny person who may feel aggrieved at anything in the assessment of his property, may appear before the board of equalization, either in person or by agent, within the time mentioned in the preceding section [the next meeting of the board of county commissioners, which sat as today as the county board of equalization] and have the same corrected in such manner as to said board shall seem just and equitable." Compiled Laws of Wyoming, Ch. CIX § 29 (1876).

[¶11] The predecessor of current Wyo. Stat. Ann. § 39-13-109(c)(i) was not enacted until 1886. It originally provided that:

District courts shall have jurisdiction to enjoin the illegal levy of taxes and assessments, or the collection of either, and of actions to recover back such taxes or assessments as have been collected, without regard to the amount thereof; but no recovery shall be had unless the action be brought within one year after the taxes or assessment are collected.

Session Laws of Wyoming Territory, Ch. 60 § 705 (1886); Revised Statutes of Wyoming, § 3053 (1887). It may be worth noting that this statute was codified in the civil code, while the statute providing a remedy for an aggrieved taxpayer was contained in the revenue section. Revised Statutes of Wyoming § 3802 (1887); *Wyodak v. Wyo. Dep't of Revenue*, 2002 WY 181, ¶ 24, 60 P.3d 129, 139 (Wyo. 2002);[4] *Atlantic Richfield Co. v. Bd. of Cty. Comm'rs, Sweetwater Cty.*, 569 P.2d 1267, 1273 (Wyo. 1977). The statutes also contained a section requiring the county commissioners to direct the county treasurer to refund any taxes which were found to be "illegal or erroneous." Revised Statutes § 3821 (1887).

[¶12] At that time, and continuing until 1956, both the Wyoming Constitution and the statutes made all property owned by towns and certain other entities exempt from taxation. *Id.* § 3771; Wyo. Const. Art. 15, § 12, found in *Journals and Debates of the Constitutional Convention*, p. 45 of final draft of the Constitution; Revised Statutes of Wyoming, p. 79 (1899). In 1956, the legislature proposed and the people adopted an amendment to Art. 15, § 12 which provided that the property of, *inter alia*, "cities, towns, ... when used primarily for a governmental purpose ... shall be exempt from taxation." *Town of Pine Bluffs v. State Bd. of Equalization*, 79 Wyo. 262, 333 P.2d 700, 704 (1958); Wyo. Const. Art. 15, § 12 as found in Wyo. Stat. Ann. (LexisNexis 2017). There is a statute that implements the amendment, exempting property "of Wyoming cities and towns owned and used primarily for a governmental purpose." Wyo. Stat. Ann. § 39-11-105(a)(v) (LexisNexis 2017). The import of all of this is that by virtue of the amendment and the statute, city and town property that had previously been completely exempt from taxation became taxable if not owned and used primarily for a governmental purpose.

[¶13] Over the years, the statutes changed in some respects, and they were reorganized. The provision which had originally provided

---

4. Both parties addressed the *Wyodak* case extensively in briefing. However, we believe it is of limited guidance because it dealt with severance tax, which is different in substance and histori-cally from the ad valorem tax involved here. However, certain dicta are consistent with the analysis that follows.

jurisdiction for district courts to enjoin illegal taxation was moved to the revenue statutes, and came to read as follows:

(i) Within one (1) year following an **illegal** assessment, levy or collection of taxes an action may be filed in district court to enjoin the **illegal** assessment, levy or collection. The· action shall be against the county assessor in the case of an illegal assessment, the governmental entity which levies an illegal levy, the county treasurer if the levy is·entered on the tax list, or against the governmental entity if the taxes were collected and paid to the entity[.]

Wyo. Stat. Ann. § 39-13-109(c)(i) (emphasis added).

[¶14] The statutes continue to require the board of county commissioners to direct the treasurer to refund payment of an "erroneous· or illegal" tax payment, as they have done since territorial days. § 39-13-109(c)(ii). They have therefore maintained the distinction between taxation which is erroneous and that which is·illegal. The provisions providing an administrative taxpayer remedy through the CBOE ·and on to the SBOE are now contained in § 39-13-109(b), and they are available to "[a]ny person wishing to contest an assessment of his property," but the modern statute provides considerably more detail than the territorial version.

**Exhaustion of Administrative Remedies**

[¶15] The County argued below that the Town's amended complaint had to be dismissed because it had not exhausted the administrative remedies contained in· § 39-13-109(b), and the district court agreed. We disagree that exhaustion was a prerequisite to resort to § 39-13-109(c)(i).

[¶16] First of all, we presume that the legislature· did not intend futile things. *State Farm Mut. Auto. Ins. Co. v. Kunz*, 2008 WY 71, ¶ 12, 186 P.3d 378, 381 (Wyo. 2008) (citing *City of Torrington v. Cottier*, 2006 WY 145, ¶ 15, 145 P.3d 1274, 1280 (Wyo. 2006)). If a taxpayer had to proceed to the CBOE, then to the SBOE, and at that point petition for review by the district court, there would be no need for an injunction to prevent the assessment, levy, or collection of an ille-

gal tax. The district court would simply enter an order on the petition for review which would resolve the matter unless it was appealed to this Court.

[¶17] We must concede that the scope of available judicial review was questionable ·when the statute was enacted. *See* Thomas M. Cooley, *Law of Taxation*, at 748 (2d ed. 1886)· (absent statutory authority to the contrary, the sole remedy available to a taxpayer may be abatement, meaning an application to the ·taxing body) (cited ·in *Bd. of Cty. Comm'rs of Johnson Cty. v. Searight Cattle Co.*, 3 Wyo. 777, 31 P. 268, 271 (1892), *overruled in part on other grounds by Kelley v. Rhoads*, 7 Wyo. 237, 51 P. 593 (1898)). However, the Wyoming Legislature has chosen to retain this statute to modern times, when there is unquestionably a right of review through the boards of equalization and the courts.

[¶18] Moreover, we must read statutes *in pari materia*. *See* cases cited in ¶ 9, *supra*; *Clark v. State ex rel. Dep't of Workforce Servs.*, 2016 WY 89, ¶ 14, 378 P.3d 310, 314 (Wyo. 2016). The statutes providing for appeal through the boards of equalization provide no mechanism for a taxpayer to stop collection of a tax—including an illegal tax. This means that the collection process could continue as the taxpayer pursues an appeal.

[¶19] Section 39-13-109(c)(i) allows district courts to enjoin collection of an illegal tax. It thus added something to the statutory scheme—a remedy for an aggrieved taxpayer to halt collection only when the tax was illegal. This conclusion is consistent with the discussion of this remedy in *Bunten v. Rock Springs Grazing Ass'n*, 29 Wyo. 461, 215 P. 244, 247 (1923) (noting that under the predecessor of § 39-13-109(c)(i), unlike statutes in other states, the taxpayer need only "aver and show facts that the tax is illegal").

[¶20] Finally, we will not read words into a statute. *In re CRA*, 2016 WY 24, ¶ 18, 368 P.3d 294, 299 (Wyo. 2016) (quoting *Adelizzi v. Stratton*, 2010 WY 148, ¶ 11, 243 P.3d 563, 566 (Wyo. 2010)). It would have been simple for the legislature to make it clear that a taxpayer could resort to seeking an injunction (as futile as that seems) only "after being. denied relief from illegal assess-

ment, levy or collection by the CBOE or SBOE." It has never done so over the century since the statute in question was enacted.[5]

[¶21] The statute is arguably an anachronism which was better suited to the days of open range, when taxable property moved on the hoof from county to county, and when Wyoming had only eight enormous counties, the boundaries of which were probably not well defined on the ground.[6] Nonetheless, the legislature has chosen to retain the power of district courts to enjoin illegal assessments, and the history of the statute and its context indicates to us that it has never been necessary to exhaust the remedies available through the CBOE and SBOE before resorting to it, within its proper sphere.

**Illegal Assessment v. Erroneous Assessment**

[¶22] That does not end our enquiry, however. As our prior decisions indicate, and as the County points out, the statutes provide a system by which the CBOE and SBOE may assure the uniformity and regular nature of assessments, levies, and collection of taxes. Wyo. Stat. Ann. § 39-11-102(c)(xii), (xvi) (department of revenue authorized to construe statutes affecting the assessment, levy, and collection of taxes by rule, and to advise county assessors as to their duties); § 39-13-102.1(c)(iv) (CBOE's charged with hearing and determining complaints relating to any property assessment or value); § 39-11-102.1(c), (c)(iv) (SBOE to settle questions arising as to construction of statutes governing the assessment, levy and collection of taxes and to adopt rules to do so).

[¶23] If § 39-13-109(c)(i) were read broadly, it could result in the tax system being governed by twenty-three district courts, the judges of which are unlikely to have the expertise of assessors, CBOEs, or the SBOE in resolving factual questions related to taxability and in assuring uniform taxation across the state. We will not interpret a statute to produce absurd results. *Estate of Meyer*, 2016 WY 6, ¶ 40 n.8, 367 P.3d 629, 641 n.8 (Wyo. 2016) (citing *Adekale v. State*, 2015 WY 30. ¶ 13, 344 P.3d 761, 765-66 (Wyo. 2015)). The legislatures, past and present, must have intended for § 39-13-109(c)(i) to have a very narrow ambit so as not to disrupt the carefully crafted process used to assure uniform assessments.[7]

[¶24] However, as Justice Blume noted long ago, "it is not always easy to draw the line between an action that is irregular and one that is illegal." *Bunten*, 215 P. at 255. *Bunten* described the difference as follows, citing cases from other jurisdictions:

> Generally speaking, an irregularity is a formal, but an illegality is a substantial, defect. The latter goes to the foundations and discovers that the proceedings have nothing to stand upon, while the former denotes that the officer, tribunal or court were acting within their jurisdiction, but failed to consummate their work in all respects according to the required forms. Illegality applies to matters which are contrary to law, irregularity to matters which

---

5.  The County referred us to our recent decision in *Thomas Gilcrease Foundation v. Cavallaro*, 2017 WY 67, 397 P.3d 166 (Wyo. 2017). In that case, the appellant claimed in a declaratory judgment action that the Teton County Assessor improperly assessed tax exempt trust property. *Id.* ¶ 8, 397 P.3d at 169. We held that the district court properly exercised its discretion in dismissing the declaratory judgment action under the primary jurisdiction doctrine. *Id.* ¶ 21, 397 P.3d at 172-73. This case is different because of the Town's reliance on § 39-13-109(c)(i) rather than the Declaratory Judgments Act, § 1-37-101 *et. seq*. It also differs from *City of Cheyenne v. Sims*, 521 P.2d 1347 (Wyo. 1974), in the same respect.

6.  Revised Statutes §§ 657 through 669 (1887) (establishing the boundaries of Albany, Carbon, Crook, Fremont, Johnson, Laramie, Sweetwater,

and Uinta counties). In *Searight, supra*, livestock was alleged simply to have strayed from Carbon County to Johnson County, which were then contiguous. 31 P. at 269. Today they are separated by Natrona County.

7.  Nothing in the statutory scheme suggests that a taxpayer may not challenge an illegal assessment through the boards of equalization rather than the district courts, since that remedy is available to "any person wishing to contest an assessment of his property." § 39-13-109(b). *See also Atlantic Richfield*, 569 P.2d at 1275 (holding that the predecessors of § 39-13-109(c)(i) and (c)(ii) were separate remedies, and that the taxpayer was not required to file an action in district court to recover a tax illegally collected before seeking a refund from the county commission).

are contrary to the practice authorized by law. One relates more to the act, the other to the manner of it; and courts are inclined, in case of doubt, to treat defects in proceedings as irregularities rather than as illegalities.

*Id.*

[¶25] The Supreme Court of Georgia offers somewhat more detail in one of its decisions:

An illegal tax assessment is one imposed without authority or in violation of federal or state law. An erroneous tax assessment is harder to define; it includes clerical errors, **assessments of tax-exempt property,** and assessments based on the wrong millage rate, but not assessments based on the county's failure to consider every relevant fact in establishing an assessed value.

*Nat'l Health Network, Inc. v. Fulton Cty.,* 270 Ga. 724, 514 S.E.2d 422, 424 (1999) (emphasis added). *See also City of Birmingham v. Piggly Wiggly Alabama Distrib. Co.,* 638 So.2d 759, 765-66 (Ala. 1994) (illegal generally defined as something "against or not authorized by law"); *Appeal of Monroe Twp. from Determination of Local Fin. Bd.,* 15 N.J. Tax 661, 672 (Super. Ct. App. Div. 1995) (illegal means "contrary to or violating a law or rule or regulation or something else (as an established custom) having the force of law"); *Sec. Abstract & Title Co. v. Leonardson,* 74 Idaho 528, 264 P.2d 1027, 1028-29 (1953) (an assessment is illegal and void if the assessor had no authority under the conditions complained of to make an ad valorem assessment against the property involved).

[¶26] The Town's amended complaint does allege that its day care property was assessed illegally, but it is clear that the claimed illegality was an error in determining that the property was not used "primarily for a governmental purpose." After 1956, assessors had the power to assess city and town property not used primarily for a governmental purpose, and so the assessor had authority to make the assessment under the authorities cited above. The availability of an exemption is solely dependent on the use of the property, and it is therefore a question of fact, not of legality. *City of Cheyenne v. Sims,* 521 P.2d 1347, 1349 (Wyo. 1974); *In re Deromedi,* 2002 WY 69, ¶ 10, 45 P.3d 1150, 1154 (Wyo. 2002).[8] The action claimed to be illegal was therefore not illegal as a matter of law, although it may as a matter of fact have been erroneous. Section 39-13-109(c)(i) therefore does not apply.

[¶27] Whether the decision to assess the day care facility was erroneous is a question not before this Court, since neither we nor the district court have authority to take action unless the activity complained of was illegal. It is certain from the face of the amended complaint that § 39-13-109(c)(i) does not provide the Town a remedy for an error in assessing the day care center, and that it needed to resort to the administrative process instead.[9]

[¶28] Affirmed.

DAVIS, J., delivers the opinion of the Court; BURKE, C.J., files an opinion concurring in part and dissenting in part, in which KAUTZ, J., joins.

---

8. In *Atlantic Richfield Co. v. Board of County Commissioners,* this Court said that an assessment of ad valorem tax on federally-owned property (royalties) was illegal. 569 P.2d at 1274. A statute in effect at the time purported to give the SBOE the power to exempt property of the federal government from taxation under certain circumstances, and so it might appear that the situation was similar. However, property owned by the federal government has been deemed to be immune from state taxation under the Supremacy Clause unless the government consents to be taxed. *M'Culloch v. State,* 17 U.S. (4 Wheat. 316), 433, 4 L.Ed. 579 (1819); *United States v. New Mexico,* 455 U.S. 720, 733, 102 S.Ct. 1373, 1382, 71 L.Ed. 2d 580 (1982) (a state may not lay a tax directly on the federal government). Although the Court did not expound on the reason for finding the tax illegal, or explain why it thought that the tax was illegal as opposed to erroneous, the decision was made against this backdrop, which is quite different than the circumstances of this case. Moreover, the observation was gratuitous—Atlantic Richfield sued to recover taxes it paid on the royalties owned by the federal government under what is now § 39-13-109(c)(ii), which allowed recovery of taxes which were "erroneous or illegal." We therefore find the case distinguishable from this one, which directly poses the question stated above.

9. We were advised by the parties that the Town did pursue the administrative remedy provided by § 39-13-109(b) with regard to the 2016 assessment of the daycare facility. Perhaps we will see this controversy again.

BURKE, Chief Justice, concurring in part and dissenting in part, in which KAUTZ, Justice, joins.

[¶29] I agree that the Town was not required to exhaust administrative remedies before seeking to enjoin an illegal assessment pursuant to Wyo. Stat. Ann. § 39-13-109(c). However, I disagree with the majority's conclusion that the assessment was not "illegal" and that the complaint was properly dismissed. I would reverse the decision of the district court.

[¶30] In interpreting any statute, we endeavor to ascertain legislative intent. Our primary source for determining that intent is the plain and ordinary meaning of the language in the statute. *Krenning v. Heart Mt. Irrigation Dist.*, 2009 WY 11, ¶ 9, 200 P.3d 774, 778 (Wyo. 2009). At issue here is the meaning of the word "illegal." The "plain and ordinary" meaning of the term "illegal" is "not according to or authorized by law." Webster's Ninth New Collegiate Dictionary 599 (1991). The Town's complaint alleges that the day care center is owned by the Town and that it is used "primarily for a governmental purpose." Taxation of town property that is used "primarily for a governmental purpose" is prohibited by Article 15, Section 12 of the Wyoming Constitution.[10] It is also prohibited by Wyo. Stat. Ann. § 39-11-105(a)(v).[11] Taxation of such property is not authorized by law. Under the plain and ordinary meaning of the term, it is "illegal."

[¶31] We have explained the purpose of such prohibitions:

The purpose of such an exemption is to prevent an escalating spiral of unnecessary taxation and administrative costs with no benefit to the public. 16 Eugene McQuillin, *The Law of Municipal Corporations*, § 44.57 at 206 (3rd ed. 1994). If one governmental entity chooses to tax the property of another governmental entity, the

governmental entity forced to pay taxes may have to levy and collect new taxes to meet the demands of the tax. 2 Cooley, *supra*, § 621 at 1313. The effect of such a tax spiral is that the public would be taxing itself to raise money to pay itself. *Id.* The only benefit of such a system is that it satisfies a bureaucratic desire for exactitude by taking money out of one pocket and putting it in another. *Id.* at 1317.

*State Bd. of Equalization v. City of Lander*, 882 P.2d 844, 850 (Wyo. 1994).

[¶32] We have also previously recognized that taxation of exempt property is "illegal." In *Bunten*, cited by the majority, Justice Blume did indicate that it is not always easy to determine if a tax is illegal. In that same case, however, he included taxation of exempt property in the "illegal" category.

It is quite difficult at times to draw the line between a tax, or an assessment—the foundation of the tax—which is merely irregular and one that is illegal, and the courts have not been altogether harmonious in their holdings. To give a few illustrations, assessments have been held illegal in whole, or in part, in the following cases: Where it was made by one not even a de facto officer, *Odem v. School Dist.* (Tex. Com. App. [1921]) 234 S.W. 1090; **where property exempt from, or otherwise not subject to, taxation is included in the assessment,** *Singer Sewing Machine Co. v. Cooper* (D.C.) 263 F. 994; *Schlosser Bros. v. Huff,* 74 Ind. App. 231, 128 N.E. 854 [ (1920) ]; *Northwestern Lumber Co. v. Chehalis County,* 24 Wash. 626, 64 P. 787 [ (1901) ]; *State v. Railway Co.,* 138 Ark. 483, 212 S.W. 317 [ (1919) ]; where the statutory notice has not been given, *Linder v. Watson,* 151 Ga. 455, 107 S.E. 62 [ (1921) ]; where property attempted to be assessed is not in existence, as a stock of merchandise reduced

---

10. Article 15, Section 12 of the Wyoming Constitution provides, in part, "The property of the United States, the state, counties, cities, towns, school districts and municipal corporations, when used primarily for a governmental purpose ... shall be exempt from taxation."

11. Wyo. Stat. Ann. § 39-11-105(a)(v) provides, in part:

(a) The following property is exempt from property taxation:

. . .

(v) Property of Wyoming cities and towns owned and used primarily for a governmental purpose.

to a few remainders, *Silverfield v. Multnomah. County*, 97 Or. 483, 192 P. 413 [ (1920) ]; where money, on the value of which no difference of opinion can exist, was assessed for more than par, *Barbour v. Goodloe*, 13 Ky. Op. 233. *See, however, Hacker v. Howe*, 72 Neb. 385, 101 N.W. 255.

*Bunten*, 215 P. at 247–48 (emphasis added).

[¶33] This Court's opinion in *Atlantic Richfield Co.*, 569 P.2d at 1274–75, also indicates that taxation of exempt property is illegal:

In the instant case, the Board contends that we are confronted merely with excessive taxation and not an illegal-taxation problem, citing *Bunten v. Rock Springs Grazing Ass'n*, 29 Wyo. 461, 215 P. 244 (1923). Clearly, however, this is an illegal-tax situation. The tax here was levied against nontaxable property belonging to the Federal Government. *See Hudson Oil Co. v. Board of County Com'rs, supra* [49 Wyo. 1], 52 [P.2d 683] at p. 688 [ (1935) ]; 84 C.J.S. Taxation § 632b(2); and § 39-7(A)(3), W.S.1957, 1975 Cum.Supp.

It is said in the C.J.S. text last cited:

"Since an assessment of taxes on property which is exempt by law is illegal and not merely erroneous, as discussed supra § 402, if the taxes have been paid, a refund may properly be claimed under statutes in substance authorizing a refund of taxes illegally paid, and the fact that such payment was voluntary does not preclude relief. So, a refund of taxes paid on exempt property may be had under a statute authorizing refund of taxes paid on property 'erroneously assessed,' or 'erroneously or illegally collected,' . . . ." (Footnote citations omitted).

[¶34] The current version of that same legal authority also provides that taxation of exempt property is "illegal."

In the absence of statutory prohibition, **where a tax is illegal, because** levied under an unconstitutional statute, or for an unlawful or unauthorized purpose, or by persons having no authority to make the levy, or **assessed on persons or property that is exempt or not subject to taxa-tion,** the illegality may be a sufficient ground to justify a court in enjoining proceedings for its collection.

85 C.J.S. *Taxation* § 1213, at 217 (2010) (emphasis added).

[¶35] We discussed the difference between an "illegal" tax and one that was "erroneous" in *Amoco Prod. Co. v. Board of County Commissioners*, 876 P.2d 989 (Wyo. 1994). That case involved Amoco's entitlement to a refund for taxes after the assessed valuation had been reduced by the Board of Equalization. We again recognized that taxes assessed without authority are "illegal" and clarified that a claim of "overassessment" does not render a tax "illegal":

In interpreting the word "illegal," we held a tax imposed on federal property was an illegal tax and not simply an overassessment. *Atlantic Richfield Co.* Similarly, when a county assessed and attempted to collect property tax on property later discovered subject to assessment only in another county, the tax was illegal because the county had no jurisdiction to impose it. . . . A tax imposed by a county on property is not illegal merely because the property was overvalued or overassessed by the state.

*Amoco Prod. Co.*, 876 P.2d at 993. Ultimately, we concluded that the incorrect valuation rendered the tax "erroneous." It was not an "illegal" tax because the County had the authority to assess and collect the taxes. "The fact the erroneous valuations were relied upon by the Counties to assess and collect taxes due does not demonstrate the taxes were 'illegal.' The Counties are invested with the authority to assess and collect such taxes." *Id.*, 876 P.2d at 995.

[¶36] In this case, the Town does not allege an error in the valuation of the property. It asserts that the County lacked the authority to tax the property under the Wyoming Constitution and pertinent statutes. The Town is not making a claim of "erroneous" taxation or assessment. It is claiming that the tax is "illegal." In doing so, it has stated a proper cause of action under Wyo. Stat. Ann. § 39-13-109(c)(i).

[¶37] Finally, I do not share the majority's concern with requiring the district courts to determine factual questions relating to taxability. Our district courts are called upon every day to make factual determinations and to apply the applicable law to those facts. Indeed, under any definition of an illegal tax, the district court would be called upon to make some degree of factual determination in deciding whether a particular assessment is an illegal assessment. I also have concerns with the path taken by the majority to its ultimate conclusion. The majority's narrow interpretation of the statute appears to be driven by its belief that taxation determinations are best handled by the administrative body created to address taxation issues. In response, I would point out that injunctive relief is not available in the administrative context. Additionally, and perhaps more significantly, we have long recognized that the availability of taxpayer remedies is within the purview of the legislature, not this Court.

Despite the numerous revisions and re-codifications of the tax code since the first refund provision was adopted in 1876 and this court's decisions indicating the separate and distinct nature of the appeal and refund remedies, the legislature has not chosen to impose an obligation of due diligence on the taxpayer as a condition precedent to the filing of a refund request. Nor has the legislature imposed a statute of limitation on requests for refund of erroneous or illegal *ad valorem* taxes. To impose such limitations on the remedies provided by the legislature to taxpayers in light of this legislative history would constitute an improper exercise of judicial power. "[T]he enactment of tax measures is exclusively within the providence of the legislature." *Wyoming State Tax Commission v. BHP Petroleum Company Inc.*, 856 P.2d 428, 439 (Wyo. 1993); *see also* Wyo. Const. art. 3, § 35. In the same vein, the following description is as apt today as it was in 1929:

> "The courts can not venture upon the dangerous path of judicial legislation to supply omissions, or remedy defects in matters committed to a co-ordinate branch of the government. It is far better to wait for necessary corrections by

those authorized to make them, or, in fact, for them to remain unmade, however desirable they may be, than for judicial tribunals to transcend the just limits of their constitutional powers."

*Midwest Hotel Co. v. State Board of Equalization*, 39 Wyo. 461, 273 P. 696, 699 (1929) (quoting *State ex rel. Crow v. West Side Street Railway Company*, 146 Mo. 155, 47 S.W. 959, 961 (1898)).

*Wyodak*, ¶ 26, 60 P.3d at 140.

[¶38] For the foregoing reasons, I would conclude that taxation of exempt property constitutes an illegal assessment under Wyo. Stat. Ann. § 39-13-109(c) and that the district court erred in dismissing the complaint. I would reverse the district court's decision.